HANCHETT et al. v. BURBIDGE et al.

No. 3724.   Decided November 28, 1921.   (202 Pac. 377.)

1. OFFICERS—POWER OF APPOINTMENT EMBRACES POWER OF REMOVAL. Unless otherwise provided by law, the power of appointment embraces the power of removal.

2. MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION HELD WITHOUT POWER TO REMOVE OFFICER. Under Laws 1921, c. 13, the civil service commission has no power to order the chief of police and board of commissioners of a city to remove or reduce in rank a chief of detectives; the power of the commission being limited to entertaining complaints from citizens, investigating the conduct of police officials, compelling attendance of witnesses, making findings and conclusions, and recommending to the head of the department what he should do in the case.

3. STATUTES—CONSTRUED ONLY IN CASE OF AMBIGUITY. When language is clear and unambiguous it must be held to mean what it expresses, and no room is left for construction.

Original proceeding in mandamus by Lafayette Hanchett

and others against Joseph E. Burbidge, and others.   On de-
murrer to complaint.

DEMURRER SUSTAINED, and complaint dismissed.

*H. L. Mulliner* and *Wm. H. Bramel,* both of Salt Lake
City, for plaintiffs.

*Wm. H. Folland,* City Atty., of Salt Lake City, for defend-
ants.

WEBER, J.

Plaintiffs seek, by mandamus proceedings brought in this
court, to compel the chief of police and board of commis-
sioners of Salt Lake City to act upon and obey an order issued
by the civil service commission of Salt Lake City, reducing
Riley M. Beckstead from the position of what is termed chief
of detectives to the rank of first class patrolman or detective,
as the chief of police may direct, and that the chief of police
appoint an acting chief of detectives for a term not exceeding
30 days.  This order was issued by the civil service commis-
sion and served upon the chief of police, Joseph E. Burbidge,
and chief of detectives, Riley M. Beckstead, after a hearing
had upon a written complaint made to the civil service com-
mission by Dr. A. C. Wherry.  The chief of police refused
to obey the order issued to him by the commission.

Defendants have demurred to the complaint, and the ques-
tions raised by the demurrer, as stated by plaintiff, are these :,

"(a)   Does chapter 13, Laws Utah 1921, grant to plaintiff com-
mission the power to order and control the change from one em-
ployment to another, reduction in rank, or removal of police officers
within or from the classified civil service, so that the same can be
exercised under any rule adopted by it, or at all?

"(b)   Did the plaintiff commission act within its power in pass-
ing paragraphs 3 and 4 of section 12 of its rules, and in directing
the change in position of Chief Beckstead thereunder?"

Paragraphs 3 and 4, above referred to, are:

"(3)   Any citizen may make complaint in writing to the secre-

tary of the commission of any violation of duty by any member of the fire or police departments, whereupon the commission may in its discretion require such citizen to appear in person at a trial to be conducted by it of the person accused.

"(4)    When any member of either the fire or police department shall be accused by a citizen or shall be discharged by the head of his department, and such discharged person shall have made written request for a hearing, the commission shall proceed to hear the evidence to be adduced in support of such accusation and reasons for discharge, at which time the accused person shall have opportunity to appear in person and with his witnesses and by counsel, and present such matters to the commission as may be material and relevant.    At any such hearing the commission may require the presence of the city recorder or one of his deputies, who shall administer the oath to all witnesses.    Upon such hearing the commission shall determine whether the charges are sustained or not, and may restore such discharged person to his position, or may direct punishment by discharge, suspension, reduction in rank, or otherwise, as in its judgment may be proper under the circumstances."

The defendants state the issue thus: .

"Is it the duty, enjoined by law, of the chief of police and board of commissioners to recognize and act upon the order removing Chief Beckstead from his position as chief, placing him in the department as a patrolman or detective, and to appoint a temporary successor?"

Unless otherwise provided by law, the power of appointment embraces the power of removal.    In the course of the opinion in *Skeen* v. *Browning*, 32 Utah, 168, 89 Pac. 643, the principle is stated as being:

"Moreover, it may be said to be an inherent right of the power that appoints—creates—the officer to also have the power to remove him, and, unless this power in some way is limited by some statutory provision, it, as a general rule, prevails."

It therefore becomes vital in this controversy to determine in whom lies the power of appointment of the officers and employés in the police department of Salt Lake City.

Upon this subject the statute repeatedly discloses the clarity of the legislative intent.    Section 666 is the first section of chapter 13, Laws Utah 1921, the act providing for a civil service commission in cities of this state, and reads as follows:

"The head of each department shall, by and with the advice and

consent of the board of city commissioners or city council, as the case may be, and subject to the rules and regulations of the civil service commission, appoint from the classified civil service list furnished by the civil service commission, all subordinate officers, employés, men or agents in said department, and in like manner fill all vacancies in the same."

The chief of police is declared by law to be the head of the police department. He and the city commissioners are the appointing power referred to in different places in the civil service commission act. With the advice and consent of the city commissioners, he appoints every subordinate in the police department. The only limitation, upon the chief of police and the city commissioners is that they must make the appointments from the classified civil service list furnished by the civil service commission.

Again, it is provided in section 666x7 of the act:

"In all cases the appointing power shall notify the civil service commission of each separate position to be filled, and shall fill such place by the appointment of one of the persons certified by the said commission therefor. Such appointment shall be on probation of a character and for a period to be prescribed by the civil service commission."

Again, section 666x8 is clear and specific in its provision that, when a position in the classified service is to be filled, the civil service commission shall certify to the appointing power the names of three times the number of persons necessary to fill such position. The appointing power referred to, as applied to the case at bar, is the chief of police, who is the head of the police department, and the names from the classified list are certified to him, in order that he may choose and appoint from among the names furnished.

It is thus obvious that all through the civil service act is manifested the clear intention of the Legislature that it is the chief of police, with the advice and consent of the city commissioners, who makes the appointments from the list furnished by the civil service commission, and that the civil service commission is never regarded as the appointing power. In one sense it is true, as argued by counsel for plaintiffs, that "the statutes give control over appointments into the hands of the plaintiff commission." Doubtless the plaintiff commis-

sion, in prescribing rules, holding examinations, and selecting from among the examined applicants those whose examinations are most satisfactory, controls the appointments, and that the civil service commission is thus the "power behind the throne," but at the last stage of the pro- **2** ceedings the chief of police and the city commissioners come upon the scene, and select from among the names furnished by the civil service commission the persons to be appointed.

Nothing in the act is indicative of any purpose to take the police and fire departments from the control of the city commission, and to take the right of appointment and removal from the heads of these departments  The police department has not been transferred to the civil service commission. Section 666x12 of the civil service commission act provides that all persons in the classified service shall be subject to removal from office or employment by the head of the department for misconduct, incompetency, or failure to perform duties, or a failure to observe properly the rules of the department, and such removal is subject to appeal by the aggrieved party to the civil service commission, whose decision thereon becomes final and conclusive.

Nor are sweeping removals contemplated by the statute. Section 666x10 provides that all persons who, at the time that the law becomes effective, shall then be and shall have been continuously for at least one year next prior thereto in the employ of the police department, shall retain their employment, subject, however, to removal or suspension in accordance with law and the rules and regulations of the civil service commission.   The effect of this section is that those in the service for one year or over may be removed for cause, but the removal must be in accordance with law and the rules of the civil service commission; and if the removal is to be made in accordance with law, it must be by the head of the department, in this case by the chief of police.   Those who were in the service less than a year are removable by the chief of police without cause.   However, we find nothing in the law that indicates that such removal can be made by the civil

service commission, or that in making the removal of those having served less than a year the chief of police is in any manner subject to the control of the civil service commission. Were nothing stated in the statute about removal of subordinates in the police department, it would still follow, from the provisions hereinbefore referred to, that it is the chief of police who is invested with the power of removal.

It is argued by counsel for plaintiffs that the civil service commission has unrestricted power over promotions within the classified service and that the power over demotions follows. If this premise be correct, the conclusion must logically follow. The problem is, however, solved by section 666x9, which says that the civil service commission shall provide for promotions in the classified civil service on the basis of ascertained merit, seniority in service, and standing obtained by competitive examination, and shall provide, in all cases where practicable, that vacancies shall be filled by promotion from among such members of the next lower rank as submit themselves for such examination for promotion. Having made the provisions required by this section, and adopted its rules for promotion in the classified service, only one further act regarding promotions is within the power of the commission, and that is provided for in the last sentence of section 666x9 in these words:

"The civil service commission shall certify to the appointing power the names of not more than three applicants having the highest rating for each promotion."

Why should the commission certify to the appointing power, to the head of the department, the names of three applicants, if the commission itself is to designate who shall be promoted? The law enjoins upon the commission the furnishing of three names, in order that the chief of police may make his selection, and that proceeding is utterly inconsistent with the claim that the civil service commission itself may designate who shall be promoted.

Counsel for plaintiffs, however, contend that their case does not rest entirely upon the matter of removal from the service, but upon the powers given by the statute for the investiga-

tion, certification, and promotion of men actually within the service.   Section 666x5 provides that the civil service commission "shall make, and it is hereby empowered to make, all necessary rules and regulations to carry out the purposes of this civil service law and for examinations, appointments and promotions."   The argument that the power to make rules to carry out the purposes of the act implies the power to enforce them is academically true, but here we are guided entirely by the statute, which gives the power to prescribe rules to the civil service commission and the power to enforce and apply them to the head of the department and the city commissioners.

The civil service act must be read in its entirety and also in connection with cognate statutory provisions.   Comp. Laws Utah 1917, § 601, provides for the appointment of all officers and agents and filling all vacancies by the board of city commissioners, and the section following that one provides that the term of office be till the next municipal election following their appointment, unless sooner removed by the board of commissioners.   These sections are modified by the civil service act, placing the appointment of officials, filling vacancies, and removals in the power of the head of the department, with the limitations in the act provided.   The power to make rules cannot be used by the civil service commission to invade the province of the city commissioners and the head of the police department.   The civil service commission obtains its powers from, and its duties are prescribed and defined by, the Legislature, and the commission can exercise only those powers expressly conferred and those necessarily implied. And this is also true of the board of city commissioners and the head of the police department.

It is proper for the plaintiff commission to adopt rules providing for examinations, appointments, and promotions.   Were more intended, section 666x9 would not contain the words that "the names of not more than three applicants" for promotion for merits shall be certified to the appointing power. That the fitness of all applicants, whether for appointment or promotion, shall in the first instance be determined by the

civil service commission, is undeniable. The main purpose of the act is to abolish every vestige of the spoils system, and to install the merit system, under which men shall be appointed because of their fitness for the positions sought, that efficiency and faithful service shall be the only cause for promotion, and that no officer or employé shall be removed except for cause, as stated in the statute and the rules of the civil service commission. That purpose is at least partially accomplished when rules and regulations have been adopted by the civil service commission, examinations held, and the names certified and furnished when required by the appointing power.

However, the concrete question here is whether the chief of police shall, upon the findings and order of the civil service commission, demote the accused officer. As stated in their reply brief by counsel for plaintiffs, the precise question is:

"Does the statute halt the commission at the threshold where the appointment is made, or does the statute authorize it to go into the police department and continue to examine and investigate the men in the service, to determine their fitness or unfitness, their merits or demerits, so as to carry out the central purpose of a civil service law? And if the latter, is the rule permitting an investigation or examination into these matters upon complaint of a citizen a reasonable one, which the commission has power to make and enforce?"

Unquestionably the civil service commission may entertain complaints from citizens, may investigate the conduct of police officials, may compel the attendance of witnesses, and make findings and conclusions, and then recommend to the head of the department what he should do in the case. But we can find nothing in the law that either expressly or by implication authorizes the civil service commission to order and command the chief of police what to do, and we find no provision which compels the chief of police to comply with the recommendations made by the commission, except when an appeal is taken from the action of the head of the department. The findings of the commission constitute a basis for action by the removing power; but, if the removing power disagrees with the findings of the commission, he need not act, and need not adopt the recommendations made to him.

It is suggested by counsel that to give the chief of police this power would emasculate and nullify the law; that the police department, instead of being brought within the purpose of the civil service act, would be placed entirely under the control of the chief; and that policemen could operate as a political machine, or so as to protect any or all classes of criminals, or could refuse to operate at all, and that the commission would thus stand by, powerless to carry out any purpose of the law. Possibly the lawlessness pictured might result, but the probability is too remote to require serious consideration. Men who occupy positions such as that of chief of police are usually appointed—even under the spoils system—because they are thought to be qualified by character, reputation, and attainments for the position. The chief of police is as much interested as any one in having an efficient police force. The mayor and city councilmen who appoint him are by statute given express power to remove him. If recommendations made by the civil service commission impress the city commissioners—five officials chosen by the people—as being fair and right, and the chief of police stubbornly and without good reason ignores the findings and recommendations of the civil service commission, we apprehend that the chief of police will soon find his occupation gone.

Possibly it would have been wiser to have invested the civil service commission with greater power and authority. However, we have nothing to do with what the law ought to be. We must be guided by the law as it is. We cannot by construction liberalize the statute and enlarge its provisions. When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction. *Miles* v. *Wells*, 22 Utah, 55, 65 Pac. 534; *State* v. *Davis*, 55 Utah, 54, 184 Pac. 161.

It is unnecessary to review the authorities cited in the briefs. Counsel for plaintiffs do not concede that those cited by defendants are in point, and counsel for defendants insist that the authorities invoked by plaintiff are not applicable. Both are right, because every decision referred to by either

party is based upon a statute in some, if not in many, respects different from that of Utah, and therefore is of no value as a precedent in the instant case.

In our opinion the order of the civil service commission demoting Riley M. Beckstead from the position of chief of detectives of Salt Lake City is not of binding force upon the chief of police; that it is only a recommendation, which he and the city commissioners have a legal right to ignore. The demurrer to the complaint is sustained, and the complaint of plaintiffs is dismissed.

CORFMAN, C. J., and GIDEON, and THURMAN, JJ., concur.

FRICK, J. I concur. I am thoroughly convinced that the Legislature did not intend that the civil service commission should exercise the appointing power, nor the power to remove or demote employés or appointees in either the police or fire department of a city. If the commission does not possess that power, then it necessarily follows that it cannot by mandamus coerce the appointing power either to remove or denote an appointee. No doubt the commission may and should receive complaints from citizens as was done in this case, and should hear the evidence, and make findings in accordance with the evidence, and in case it arrives at the conclusion that a certain appointee or employé either in the police or fire department, should be removed or demoted, it should transmit its findings to the proper officer recommending such action as in its judgment such officer should take in the premises. If, however, an officer refuses to comply with the commission's recommendations, either in whole or in part, the statute does not contemplate that the commission may through the courts by mandamus, compel such officer to carry into effect its recommendations.

Neither is it necessary to go to that extent. Under the statute it will only be a comparatively short time until the police and fire departments will be composed of individuals who have passed the examination required by the commission act, and who will have been recommended by it. The appointing

power must, however, remain in the officer or city authorities who are directly responsible to the people for the efficient and good conduct of every employé or appointee under the civil service law. If the civil service commission will discharge the duties imposed upon it by the civil service statute, it will find that in most instances its recommendations will be heeded, and in case they are not, when in fact they should be, the remedy will be applied by the people themselves, by dealing with an inefficient and recalcitrant officer, who fails to appoint proper men who must serve under him.