OSI INDUSTRIES, INC. dba
Otto & Sons, Petitioner,

v.

UTAH STATE TAX COMMISSION,
AUDITING DIVISION,
Respondent.

No. 930185–CA.

Court of Appeals of Utah.

Sept. 10, 1993.

Walter P. Faber, Jr. (argued), Salt Lake City, for petitioner.

Jan Graham, State Atty. Gen., Gale K. Francis, Asst. Atty. Gen. (argued), Salt Lake City, for respondent.

Before GREENWOOD and JACKSON, JJ., and RUSSON, Associate P.J.

## OPINION

RUSSON, Associate Presiding Judge:

OSI Industries, Inc. (OSI), seeks review of a decision of the Utah State Tax Commission (Tax Commission) upholding the assessment of a sales tax on OSI's purchase of liquid nitrogen. We reverse and remand.

## FACTS

OSI operates a meat processing plant that produces ground meat patties for sale to McDonald's restaurants. In order to preserve the required quality and uniformity of the meat patties, OSI sprays liquid nitrogen on the patties to "flash freeze" them to very low temperatures. The patties are then packed in containers and placed in cold storage to maintain their frozen condition until they can be shipped in refrigerated vehicles to McDonald's restaurants. The cryogenic freezing is used to ensure the quality, purity, uniformity and freshness of the patties from the time of freezing. The hard freezing acts as a shield, preventing chemical changes in the patties that lead to a proliferation of bacterial microorganisms, such as salmonella, staphylococcus and E. coli, which in turn increase the probability of spoilage and disease-producing conditions.

OSI was audited by the Tax Commission for the period of January 1, 1988, to December 31, 1990. During that period, OSI purchased liquid nitrogen from its vendors without paying sales tax on the purchase price. OSI maintains that its purchase of liquid nitrogen is exempted from sales tax pursuant to Utah Code Ann. § 59–12–104 (Supp.1993), which reads:

> The following sales and uses are exempt from the taxes imposed by this chapter:

> · · · · ·

> (20) sprays and insecticides used to control insects, diseases, and weeds for commercial production of fruits, vegetables, feeds, seeds, and animal products;

> . . . .

The auditor disagreed with OSI's reading of section 59–12–104(20), and assessed OSI a tax deficiency, including interest and a penalty. OSI filed for redetermination with the Tax Commission. The Tax Commission upheld the auditor's determination on the grounds that the liquid nitrogen purchased by OSI: (1) is not a "spray" within the meaning of Utah Code Ann. § 59–12–104(20) (Supp.1993); and (2) is not used to control "diseases" as contemplated by that section.

OSI seeks review of that decision, challenging the Tax Commission's determina-

tion that the liquid nitrogen purchased by OSI is not entitled to a sales tax exemption under Utah Code Ann. § 59–12–104(20) (Supp.1993).

## STANDARD OF REVIEW

The Utah Legislature recently changed the standard of review that this court is to use in reviewing formal adjudicative proceedings of the Utah State Tax Commission. Utah Code Ann. § 59–1–610 (Supp. 1993), which became effective May 3, 1993, provides:

(1) When reviewing formal adjudicative proceedings commenced before the commission, the Court of Appeals or Supreme Court shall:

(a) grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and

(b) grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court.

(2) This section supersedes Section 63–46b–16 pertaining to judicial review of formal adjudicative proceedings.

■ As a general rule, a party is entitled to have its rights determined on the basis of the law as it existed at the time of the occurrence, and a later statute or amendment should not be applied retroactively so as to deprive a party of its rights or impose greater liability upon it. *See* Utah Code Ann. § 68–3–3 (1986) ("No part of these revised statutes is retroactive, unless expressly so declared."); *accord Madsen v. Borthick,* 769 P.2d 245, 253 (Utah 1988); *Stephens v. Henderson,* 741 P.2d 952, 953 (Utah 1987); *Okland Constr. Co. v. Industrial Comm'n,* 520 P.2d 208, 210 (Utah 1974).

■ However, a contrary rule applies when a statute changes only procedural, not substantive, law. "Procedural statutes enacted subsequent to the initiation of a suit which do not enlarge, eliminate, or destroy vested or contractual rights apply not only to future actions, but also to accrued and pending actions as well." *Pilcher v. Department of Social Servs.,* 663 P.2d 450, 455 (Utah 1983) (quoting *Department of Social Servs. v. Higgs,* 656 P.2d 998, 1000 (Utah 1982)); *accord Smith v. Cook,* 803 P.2d 788, 792 (Utah 1990); *Washington Nat'l Ins. Co. v. Sherwood Assocs.,* 795 P.2d 665, 667 (Utah App.1990). Since section 59–1–610 does not enlarge, eliminate or destroy either of the parties' rights, we apply it in the present case. *See Pilcher,* 663 P.2d at 455–56; *see also State v. Thurman,* 846 P.2d 1256, 1267 (Utah 1993) (holding that standard of review is "a matter of procedural, rather than substantive, law").

As to the statute at issue in the case at bar, Utah Code Ann. § 59–12–104 (Supp. 1993), the parties have not cited us to, and we have been unable to find, any explicit grant of discretion to the Tax Commission to interpret or apply the language of that section. Accordingly, we review the Tax Commission's interpretation and application of section 59–12–104(20) for correctness.[1]

## ANALYSIS

At a formal hearing held on June 23, 1992, the Tax Commission determined that the liquid nitrogen purchased by OSI is not exempt from sales tax because: (1) it does not constitute a "spray" within the meaning of Utah Code Ann. § 59–12–104(20) (Supp.1993); and (2) it is not used to control "diseases" as contemplated by that section.

■ "When statutory language is plain and unambiguous, we do not look beyond the same to divine legislative in-

**1.** Rather than citing us to an explicit grant of discretion to interpret and apply section 59–12–104(20), the Tax Commission instead simply argues that since this court, in *Putvin v. Utah State Tax Comm'n,* 837 P.2d 589, 590 (Utah App. 1992), determined that Utah Code Ann. § 59–12–118 (1992) contains an explicit grant of discretion to the Tax Commission to administer the tax code generally, the Tax Commission's decision in this case should be overturned only if unreasonable. However, this court has subsequently clarified that the language in *Putvin* relied upon by the Tax Commission is "better characterized as an *implicit* grant [of discretion] under *Morton.*" *King v. Industrial Comm'n,* 850 P.2d 1281, 1288 n. 10 (Utah App.1993) (emphasis added).

tent." *Hatton–Ward v. Salt Lake City Corp.*, 828 P.2d 1071, 1072 (Utah App.) (citing *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989); *State v. Singh*, 819 P.2d 356, 359 (Utah App.1991), *cert. denied*, 832 P.2d 476 (Utah 1992)), *cert. denied*, 843 P.2d 1042 (Utah 1992); *accord Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988). "Rather, we construe a statute according to its plain language." *Hatton–Ward*, 828 P.2d at 1072 (citing *Brinkerhoff*, 779 P.2d at 686); *accord Allisen*, 763 P.2d at 809. "Specifically, we will not interpret unambiguous language in a statute to contradict its plain meaning." *Hatton–Ward*, 828 P.2d at 1072 (citing *Bonham v. Morgan*, 788 P.2d 497, 500 (Utah 1989) (per curiam); *Johnson v. Utah State Retirement Bd.*, 770 P.2d 93, 95 (Utah 1988)). Additionally, in interpreting unambiguous statutes, we "assume[ ] that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991) (footnote omitted). Thus, each term "should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute." *Morton Int'l, Inc. v. Utah State Tax Comm'n*, 814 P.2d 581, 590 (Utah 1991) (footnote omitted).

We now turn to the statute at issue in the present case, Utah Code Ann. § 59–12–104 (Supp.1993), which provides:

> The following sales and uses are exempt from the taxes imposed by this chapter:
>
> .    .    .    .    .
>
> (20) sprays and insecticides used to control insects, diseases, and weeds for commercial production of fruits, vegetables, feeds, seeds, and animal products;
>
> . . . .

■ The Tax Commission argues that under the doctrine of *noscitur a sociis*,[2] the term "sprays" in that section should be limited to those substances which are used in the same manner as insecticides and herbicides. Thus, the Tax Commission asserts, since the liquid nitrogen used by OSI is not an insecticide or herbicide applied to agricultural products, its use does not fall within the meaning of the statute. Likewise, the Tax Commission claims that although the liquid nitrogen sprayed on meat patties prevents the growth of microorganisms on the meat patties which lead to spoilage, "[t]his natural process of spoilage does not constitute a 'disease' as contemplated under the statute." According to the Tax Commission, the term "diseases" should be limited to "external force[s], such as infection, that create[ ] an abnormal impairment of a plant or animal's normal functions. It does not imply the natural decay of agricultural or animal products."

OSI responds that spraying liquid nitrogen on meat patties to prevent microorganisms that cause disease fits within the plain meaning of Utah Code Ann. § 59–12–104(20) (Supp.1993), and that reference to other rules of statutory construction to determine the proper meaning of that section is unnecessary. We agree.

■ The plain language of Utah Code Ann. § 59–12–104(20) (Supp.1993) provides that "sprays . . . used to control . . . diseases . . . for commercial production of . . . animal products" are exempt from sales tax. Assuming that each term in the statute was used advisedly, *see Savage Indus., Inc.*, 811 P.2d at 670, we interpret and apply the terms "spray" and "diseases" according to their usually accepted meaning, unless such reading results in an application that is unreasonably confused, inoperable, or in blatant contradiction of the express purpose of the statute. *Morton Int'l, Inc.*, 814 P.2d at 590; *Savage Indus., Inc.*, 811 P.2d at 670. The word "spray," as it is commonly understood, is defined as "[l]iquid moving in fine droplets or mist" or "[a] jet of vapor, as that discharged from a

---

**2.** The doctrine of *noscitur a sociis* provides that "the meaning of questionable words and phrases in a statute be ascertained by reference to the words or phrases associated with them." *Morton Int'l, Inc.,* 814 P.2d at 590–91 (footnote omitted).

pressurized container." *Webster's II New Riverside Dictionary* 667 (1984). Nowhere in the definition of the term "spray" is there anything to suggest that its meaning is limited to insecticides and herbicides. Furthermore, had the legislature intended that section 59–12–104(20) apply only to herbicides and insecticides, we must assume that it would not have included the word "sprays" in that section. *See Savage Indus., Inc.,* 811 P.2d at 670. As the plain language of Utah Code Ann. § 59–12–104(20) (Supp.1993) reads, it applies to all sprays which are "used to control insects, diseases, and weeds for commercial production of fruits, vegetables, feeds, seeds, and animal products...." Accordingly, we conclude that the liquid nitrogen spray used by OSI to flash freeze meat patties is included within the plain language of that section.[3]

■ Likewise, the term "diseases," according to its usually accepted meaning, is defined as "a condition of an organism that impairs normal physiological functioning." *Webster's II New Riverside Dictionary* 202 (1984). Further, "salmonella" is defined as "[a]ny of various rod-shaped bacteria of the genus *Salmonella,* many of which are pathogen[s]," *id.* at 613–14, and a "pathogen" is "[a]n agent, especially a microorganism such as a bacterium, *that causes disease.*" *Id.* at 514 (emphasis added). Similarly, "staphylococcus" is defined as "[a]ny of various spherical parasitic bacteria of the genus *Staphylococcus,* causing infections such as ... septicemia," *id.* at 672, and "septicemia" is "[a] condition in which *disease-causing* microorganisms or their toxins are present in the bloodstream." *Id.* at 631 (emphasis added). It follows that the liquid nitrogen sprayed on the meat patties, which, among other things, prevents the spread of salmonella, staphylococcus and E. coli, clearly is being "used to control ... diseases." Utah Code Ann. § 59–12–104(20) (Supp.1993). Thus, since the liquid nitrogen purchased by OSI fits within the plain language of section 59–12–104(20), the Tax Commission's determination cannot stand, and OSI is entitled to a tax exemption on its purchases of liquid nitrogen.

■ Lastly, we note that "[a]lthough exemptions from taxation are generally construed narrowly, they should, nonetheless, be construed with sufficient latitude to accomplish the intended purpose." *Utah County v. Intermountain Health Care, Inc.,* 725 P.2d 1357, 1359 (Utah 1986) (citations omitted); *accord Parson Asphalt Prods., Inc. v. Utah State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980). Moreover, unambiguous language in a statute should not be interpreted to contradict its plain meaning. *Hatton–Ward,* 828 P.2d at 1072 (citing *Bonham,* 788 P.2d at 500; *Johnson,* 770 P.2d at 95). Because the terms "sprays" and "diseases" may be interpreted according to their plain meaning, it was inappropriate for the Tax Commission to resort to other rules of statutory construction in interpreting Utah Code Ann. § 59–12–104(20) (Supp.1993).

## CONCLUSION

Based on the foregoing, we reverse the Tax Commission's decision, and remand this matter for further proceedings consistent with this opinion.

GREENWOOD, J., concurs.

JACKSON, J., concurs in the result.

---

3. Moreover, since an agency may not alter the effect of a statute by adopting an interpretation that imposes terms not found in the statute, *Ferro v. Utah Dep't of Commerce,* 828 P.2d 507, — 513–14 (Utah App.1992), the Tax Commission's attempt to limit the definition of "sprays" to those substances which are used in the same manner as insecticides or herbicides fails.