STATE of Utah, Plaintiff and Appellant,

v.

Nick A. PAUL, Defendant and Appellee.

No. 920517–CA.

Court of Appeals of Utah.

Oct. 6, 1993.

David E. Yocom and Paul B. Parker, Salt Lake City, for plaintiff and appellant.

Deborah Kreeck Mendez, Salt Lake City, for defendant and appellee.

Before BENCH, RUSSON and GARFF,[1] JJ.

## OPINION

BENCH, Judge:

The State challenges the trial court's order granting defendant's motion to dismiss. We affirm.

## FACTS

While confined as a prisoner in the Salt Lake County Jail, defendant allegedly spit on a correctional officer in May 1992. He was charged with assault on a correctional officer in violation of Utah Code Ann. § 76-5-102.6 (Supp.1993). The trial court granted defendant's motion to dismiss, holding that defendant's conduct did not violate section 76-5-102.6. This appeal followed.

## STANDARD OF REVIEW

■ The State's appeal turns on the interpretation of section 76-5-102.6. Questions of statutory interpretation are questions of law, which we review for correctness giving no deference to the trial court's interpretations. *State v. Souza*, 846 P.2d 1313, 1317 (Utah App.1993).

## ANALYSIS

The dispositive issue on appeal is whether the trial court erred in holding that spitting on a correctional officer was not a

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78-3-24(10) (1992).

2. The parties also briefed whether § 76-5-102.6 is unconstitutionally vague as applied to the act of spitting at a correctional officer. If we were

crime under section 76-5-102.6.[2] Section 76-5-102.6 provides that "[a]ny prisoner who throws fecal material or any other substance or object at a peace or correctional officer is guilty of a class A misdemeanor." In the present case, defendant was alleged only to have spit on a correctional officer. The question we are presented with, therefore, is whether the plain meaning of the word "throw" in section 76-5-102.6 includes spitting.

■ The statute plainly and unambiguously prohibits a prisoner from throwing any substance or object at a correctional officer. Where statutory language is plain and unambiguous, appellate courts cannot look beyond the language to divine legislative intent, but must construe the statute according to its plain language. *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989); *State v. Singh*, 819 P.2d 356, 359 (Utah App.1991), *cert. denied*, 832 P.2d 476 (Utah 1992); *see also* Norman J. Singer, *Sutherland Statutory Construction* § 46.01 (5th ed. 1992) (if meaning of statute is plain, the "sole function of the courts is to enforce it according to its terms"). Each term in a statute should be interpreted according to its usual and commonly accepted meaning. *Utah County v. Orem City*, 699 P.2d 707, 708 (Utah 1985) (footnote omitted). We presume that words are used in their ordinary sense. *In re Adoption of M.L.T.*, 746 P.2d 1179, 1180 (Utah App.1987). We must therefore interpret the word "throw" according to its commonly accepted meaning.

■ No dictionary we have examined defines "throw" as spitting. The following dictionary definitions of "throw" are the first listed and most commonly accepted: (1) "to propel through the air by means of a sudden straightening or whirling of the arm," *Webster's Illustrated Contemporary Dictionary* 768 (1982); (2) "to propel

to hold that the statute includes spitting, as urged by the dissent, we would then have to address defendant's vagueness claim. However, since we hold that the statute does not include spitting at a correctional officer, we need not reach the vagueness claim.

through the air with a swift motion of the arm," *The American Heritage Dictionary* 1314 (2d ed. 1985); and (3) "to send through the air with a motion of the hand or arm," *Roget's II, The New Thesaurus* 1012 (expanded ed. 1988). While some secondary definitions define the term much more broadly, we do not consider such subsidiary definitions since section 76–5–102.6 uses "throw" in its usual sense.[3] Therefore, under its most commonly accepted meaning, throw does not encompass spitting. To interpret the statute to include spitting would be to add a new provision that was not put there by the legislature.

Further, courts typically construe statutes on the assumption that "each term is used advisedly and that the intent of the Legislature is revealed in the use of the term in the *context and structure in which it is placed." Ward v. Richfield City*, 716 P.2d 265, 266 (Utah 1984) (emphasis added), *aff'd on remand*, 776 P.2d 93 (Utah App.1989), *cert. granted*, 783 P.2d 53 (Utah 1989), *aff'd*, 798 P.2d 757 (Utah 1990). When section 76–5–102.6 was enacted, the legislature expressly broadened the subject matter of what should not be thrown at a correctional officer by indicating "fecal material *or any other substance or object."* (Emphasis added.) In contrast, the legislature did not broaden the action verb. The only way a prisoner can assault a correctional officer under this statute is to "throw" something at the officer. If the legislature wanted to expand the means whereby a prisoner could assault a correctional officer, it could have

broadened the language to include spitting. This it did not do. Under the plain language of the statute, the only prohibited means of propelling a substance or object is by the act of throwing.

Although the policy behind the statute may be to protect correctional officers from prisoner's misconduct, this statute unambiguously prohibits only the throwing of objects or material at officers. The fact that the legislature "failed to enact a provision dealing with this type of [offense] does not justify inclusion of this conduct within the terms of the present statute." *State ex rel. J.L.S.*, 610 P.2d 1294, 1296 (Utah 1984) (footnote omitted); *see also West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982) (where "ordinary meaning of the terms results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction to the express purpose of the statute, it is not the duty of this Court to assess the wisdom of the statutory scheme"); *Mountain States Tel. & Tel. Co. v. Public Serv. Comm'n*, 107 Utah 502, 503, 155 P.2d 184, 185 (court's interpretation of challenged statute must be based on "language used, and ... the court has no power to rewrite a statute to make it conform to an intention not expressed"), *reh'g denied*, 107 Utah 530, 158 P.2d 935 (1945).

[W]e have nothing to do with what the law ought to be. We must be guided by the law as it is. We cannot by construction liberalize the statute and enlarge its provisions. When language is clear and unambiguous, it must be held to mean

---

**3.** The dissenting opinion cites *West v. Thomson Newspapers*, 835 P.2d 179 (Utah App.1992) to demonstrate that courts have used secondary definitions. However, *West* is distinguishable from the instant case. In *West*, a newspaper reporter was accused of defamation for stating, among other things, that plaintiff was not too subtle in his attempts to "manipulate the press." This court referred to a secondary definition because the word "manipulate," as used by the news reporter, was ambiguous and susceptible to several interpretations. The trial court was therefore required, on remand, to determine the intent of the newspaper reporter's statement.

In the instant case, however, we are dealing with a statute. We presume the legislature uses each term in a statute advisedly. *See State v. Masciantonio*, 850 P.2d 492, 493 (Utah App.

1993) (citation omitted). The legislature's use of "throw" in § 76–5–102.6 is unambiguous. The legislature used the word in its usual and most common sense. Therefore, it is improper for this court to look beyond the plain language to divine legislative intent. *See Singh*, 819 P.2d at 359.

The dissent also cites other statutes where the legislature uses the word "throw." These statutes are distinguishable from § 76–5–102.6 because they clearly use secondary meanings of the word "throw." As such, it is reasonable to use secondary definitions to interpret these statutes. Using secondary definitions in this case, however, is unwarranted since § 76–5–102.6 uses "throw" in its most common sense. Common usage restrains us from torturing the definition of "throw" to include spitting.

what it expresses, and no room is left for construction. *Hanchett v. Burbidge,* 59 Utah 127, 135, 202 P. 377, 380 (1921). Accordingly, we cannot rewrite section 76–5–102.6 to include actions that are not expressed in the statute since it is the legislature's job to declare what activity is criminal. Judicial responsibility to construe statutes must not be confused with legislative responsibility to enact them. Expanding the express language used by the legislature in this case to include spitting would improperly exceed the limits of our judicial responsibility.

## CONCLUSION

Defendant's conduct in this case was certainly offensive. It was not, however, criminal under section 76–5–102.6. If spitting at a correctional officer is to be considered criminal behavior, it is for the legislature to so provide. Since the statute does not prohibit defendant's actions, it may not be enforced against him.

We therefore affirm the trial court's grant of defendant's motion to dismiss.

RUSSON, J., concurs.

GARFF, Judge (dissenting):

I respectfully dissent. I would reverse the trial court's conclusion that the word "throw" as used in the statute refers to propelling only by "the forward motion of the arm."

The statute provides that "[a]ny prisoner who throws fecal material or any other substance or object at a peace or correctional officer is guilty of a class A misdemeanor." Utah Code Ann. § 76–5–102.6 (Supp.1993). As applied to the present case, the issue is whether the trial court erred in concluding that appellant Nick Paul's act of spitting on a correctional officer did not violate the statute.

The majority relies on the "first definitions" of several dictionaries to determine the definition that is "the most commonly accepted." [1] However, a coordinate subsense of the primary definition is the following: "to propel through the air in any manner." Webster's Third New International Dictionary (unabridged) 2385 (1986). *See also* Webster's Explanatory Note 12.2 and 12.4 at 17a (explaining that the various subsenses do not represent "an enduring hierarchy," and that the "best sense is the one that most aptly fits the context").

Elsewhere, the legislature has used the word "throw" in its broader sense, which is unrelated to the forward movement of the hand and arm. For instance, motor vehicle wheels that "may throw dirt" must have mud guards. Utah Code Ann. § 41–6–150.-10(2)(a) (Supp.1992). Students participating in activities involving "the operation of equipment that could throw particles" must wear eye protection. Utah Code Ann. § 53A–13–103(1)(a)(ii) (1992).

Here, I would conclude that the sense of the word "throw" that most aptly fits the statutory context is "to propel in any manner." Webster's at 2385. The statutory language prohibits a prisoner from throwing substances on a correctional officer. To my mind, spitting on a correctional officer falls within the purview of the statute, and the manner of bodily propulsion is inconsequential so long as the criminal intent remains the same.

---

**1.** In a recent decision, the majority relied in part on a secondary sense of a primary definition to support its conclusion that the word "manipulate" has a defamatory meaning. *See West v. Thomson Newspapers,* 835 P.2d 179, 190 (Utah App.), *cert. granted,* 843 P.2d 1042 (Utah 1992). In contrast, the dissent questioned the appropriateness of relying on only one of many possible senses of a primary definition to make that determination. *Id.* at 192.