**MT. OLYMPUS WATERS, INC., Petitioner,**

v.

**UTAH STATE TAX COMMISSION, Respondent.**

No. 940202–CA.

Court of Appeals of Utah.

July 6, 1994.

Rehearing Denied July 27, 1994.

Kent B. Linebaugh and John N. Brems, Salt Lake City, for petitioner.

Jan Graham and Mark E. Wainwright, Salt Lake City, for respondent.

Before BILLINGS, P.J., and BENCH and GREENWOOD, JJ.

OPINION

BILLINGS, Presiding Judge:

Petitioner Mount Olympus Waters, Inc. (Mount Olympus) appeals a final order of the

Utah State Tax Commission (the Commission). We affirm in part and reverse in part.

## FACTS

Mount Olympus is in the business of bottling and selling spring water, distilled water, and purified water. Spring water accounts for approximately sixty percent of its overall sales. Mount Olympus uses a filtering technique, rather than heat, to remove microorganisms from the water it bottles.

Mount Olympus purchases reusable five-gallon bottles as containers for some of its products.[1] Customers pay Mount Olympus a deposit on these bottles, which is refunded to the customer when the bottles are returned. In 1991, the Auditing Division of the Commission (the Division) conducted a sales and use tax audit of Mount Olympus for the period of January 1988 through December 1990. As a result of the audit, the Division assessed Mount Olympus an additional sales tax liability of $49,324.26. Mount Olympus challenged the Division's assessment.

The Commission affirmed the Division's determination that Mount Olympus was subject to additional sales tax liability, concluding: (1) Mount Olympus is the ultimate consumer of the reusable five-gallon bottles and thus its purchase of those bottles is not exempt from sales tax; (2) sales tax on amounts received by Mount Olympus as container deposits was properly assessed; and (3) a sales tax exemption is unavailable to Mount Olympus for machinery and equipment it purchased because the equipment is not used in a manufacturing facility.

Mount Olympus appeals the Commission's decision, arguing the Commission erred in: (1) relying on Utah Administrative Rule R865–19–48S to conclude that Mount Olym-

pus's purchases of the water bottles, and the deposits paid by customers on the water bottles, were not exempt from sales tax; and (2) determining that the machinery and equipment at issue were not used in a manufacturing facility and thus were not entitled to the manufacturing exemption.

## I. CONTAINER AND DEPOSIT EXEMPTION

### A. Standard of Review

The standard we utilize to review formal adjudicative proceedings before the Commission was recently codified in section 59–1–610 of the Utah Code,[2] which provides:

(1) When reviewing formal adjudicative proceedings commenced before the commission, the Court of Appeals or Supreme Court shall:

(a) grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and

(b) grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court.

Utah Code Ann. § 59–1–610 (Supp.1993).[3]

Mount Olympus challenges the Commission's interpretation of the statutory container exemption. See id. § 59–12–104(24). The parties have not cited us to, and we have been unable to find, any explicit grant of discretion to the Commission to interpret the language of this section. Thus, we review for correctness the Commission's conclusion that Mount Olympus's purchases of reusable five-gallon bottles, and its customers' deposits for

---

1. Although Mount Olympus uses several different-sized containers, only the reusable five-gallon container is at issue here.

2. Section 59–1–610 supersedes the Utah Administrative Procedures Act pertaining to judicial review of formal adjudicative proceedings before the Commission. Utah Code Ann. § 59–1–610(2) (Supp.1993); *accord Matrix Funding Corp. v. State Tax Comm'n*, 868 P.2d 832, 833 n. 1 (Utah App.1994); *49th Street Galleria v. State Tax Comm'n*, 860 P.2d 996, 999 (Utah App.1993).

3. Although this case was filed prior to the effective date of § 59–1–610, it nevertheless governs our review. *See OSI Indus., Inc. v. State Tax Comm'n*, 860 P.2d 381, 383 (Utah App.1993) (applying § 59–1–610 retroactively because procedural); *accord Board of Equalization v. State Tax Comm'n*, 864 P.2d 882, 884 (Utah 1993) (holding § 59–1–610 applies to actions commenced before its effective date).

such bottles, were taxable. *See Harper Inv., Inc. v. State Tax Comm'n,* 868 P.2d 813, 815 (Utah 1994).

### B. Section 59–12–104(24) and Rule R865–19–48S

■ Mount Olympus contends the Commission erred in relying on Utah Administrative Rule R865–19–48S to conclude that Mount Olympus's purchases of five-gallon water bottles, and the deposits for these bottles, are not exempt from sales tax. Mount Olympus argues that Rule R865–19–48S is invalid because it is contrary to the plain meaning of section 59–12–104.

Section 59–12–104 provides:

The following sales and uses are exempt from the taxes imposed by this chapter:

. . . .

(24) *any container,* label, shipping case, or, in the case of meat or meat products, any casing[.]

Utah Code Ann. § 59–12–104(24) (Supp.1993) (emphasis added). Rule R865–19–48S provides:

A. *Sales of containers,* labels, bags, shipping cases, and the like are taxable when:

1. sold to the final user or consumer;

2. sold to a manufacturer, processor, wholesaler, or retailer for use as a *returnable container* which is ordinarily returned to them and reused by them in storing or transporting their product;

. . . .

C. *Returnable containers that are ordinarily reused and subject to the tax include water bottles,* carboys, drums, beer kegs for draft beer, dairy product containers, and gas cylinders.

. . . .

E. When a retailer sells tangible personal property in containers, such as soft drinks, and chooses to assess a *deposit or other container charge, such charge is subject to the tax. Upon refund of this charge, the retailer may take credit on a sales tax return if the tax is refunded to the customer.*

Utah Code Admin.P. R865–19–48S (emphasis added).

■ To be valid, Rule R865–19–48S must be in harmony with its governing statute, section 59–12–104(24). *Sanders Brine Shrimp v. State Tax Comm'n,* 846 P.2d 1304, 1306 (Utah 1993) ("It is a long-standing principle of administrative law that an agency's rules must be consistent with its governing statutes. Thus, a rule that is out of harmony with a governing statute is invalid."). "The authority of administrative agencies to promulgate rules and regulations 'is limited to those regulations which are consonant with the statutory framework, and neither contrary to the statute *nor beyond its scope.'*" *Dusty's, Inc. v. State Tax Comm'n,* 842 P.2d 868, 871 n. 5 (Utah 1992) (per curiam) (quoting *Crowther v. Nationwide Mut. Ins. Co.,* 762 P.2d 1119, 1122 (Utah App.1988)) (emphasis added). It is up to the legislature, not the Commission, to restrict the statutory language used. *Belnorth Petroleum Corp. v. State Tax Comm'n,* 845 P.2d 266, 271 (Utah App.), *cert. denied,* 859 P.2d 585 (Utah 1993); *accord Salt Lake County v. State Tax Comm'n,* 779 P.2d 1131, 1132 (Utah 1989). Indeed, "an administrative interpretation out of harmony and contrary to the express provisions of a statute . . . would in effect amend that statute." *Olson Constr. Co. v. State Tax Comm'n,* 12 Utah 2d 42, 45, 361 P.2d 1112, 1113 (1961).

■ In deciding the meaning of section 59–12–104(24), we are guided by the principle that "[e]ach term in a statute should be interpreted according to its usual and commonly accepted meaning. We presume that words are used in their ordinary sense." *State v. Paul,* 860 P.2d 992, 993 (Utah App. 1993) (citation omitted). Furthermore, "courts typically construe statutes on the assumption that 'each term is used advisedly and that the intent of the Legislature is revealed in the use of the term in the *context and structure in which it is placed.'" Id.* at 994 (quoting *Ward v. Richfield City,* 716 P.2d 265, 266 (Utah 1984) (emphasis added)).

The plain language of section 59–12–104(24) exempts from taxes "*any* container, label, shipping case, or, in the case of meat or meat products, any casing." The word

"any," as it is commonly understood, means: "[A]n indefinite number. One indiscriminately of whatever kind or quantity." *Black's Law Dictionary* 86 (5th ed. 1979). Nowhere in the statute is there anything to ·suggest that its meaning is limited to non-reusable containers. The plain language of the section 59–12–104(24) exemption applies to all containers, both reusable and nonreusable. Thus, Rule R865–19–48S impermissibly limits the container exemption to nonreusable containers.

The Commission argues that the legislative history of section 59–12–104(24) indicates that the legislature intended the exemption to apply only to containers ultimately consumed by purchasers of the manufactured product, not to reusable containers, which are ultimately consumed by the manufacturer. However, "[w]here statutory language is plain and unambiguous, appellate courts cannot look beyond the language to divine legislative intent, but must construe the statute according to its plain language." *Paul,* 860 P.2d at 993; *accord Brinkerhoff v. Forsyth,* 779 P.2d 685, 686 (Utah 1989).

> "[W]e have nothing to do with what the · law ought to be. We must be guided by the law as it is. We cannot by construction liberalize the statute and enlarge its provisions. When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction."

*Paul,* 860 P.2d at 995 (quoting *Hanchett v. Burbidge,* 59 Utah 127, 135, 202 P. 377, 380 (1921)).[4]

The Commission also claims that we should look beyond the plain meaning of section 59–12–104(24) to legislative intent because the statute as written is inoperable. *OSI Indus., Inc. v. State Tax Comm'n,* 860

P.2d 381, 384 (Utah App.1993); *accord Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 590 (Utah 1991); *Savage Indus., Inc. v. State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991); *West Jordan v. Morrison,* 656 P.2d 445, 446 (Utah 1982). We cannot say section 59–12–104(24) is inoperable.

Because section 59–12–104(24) is neither ambiguous nor inoperable, we are bound by the clear mandate of its terms. The section exempts manufacturers from paying sales tax on "any container," not "any nonreusable container." Rule R865–19–48S imposes an impermissible restriction on section 59–12–104(24) and is invalid. Thus, the Commission erred in relying on the rule. We therefore reverse the Commission's assessment of sales tax on Mount Olympus's purchases of, and customers' deposits for, five-gallon water containers.

## II.  MACHINERY AND EQUIPMENT EXEMPTION

■ Mount Olympus next contends it is entitled to a sales tax exemption for certain machinery and equipment it purchased.[5] Mount Olympus relies on section 59–12–104(15), which requires, among other things, that the purchased machinery and equipment be used in a manufacturing facility in order to be exempt from taxation. *See* Utah Code Ann. § 59–12–104(15) (Supp.1993). The Commission concluded that Mount Olympus did not qualify as a manufacturing facility within the statutory definition and thus was not entitled to the exemption.

### A.  Standard of Review

■ Mount Olympus challenges the Commission's determination that Mount Olympus is not a manufacturing facility for purposes of section 59–12–104(15). We note the stat-

---

4.  While this appeal was pending, the 1994 Utah Legislature amended § 59–12–104(24), eliminating the language at issue. The new version states:

> The following sales and uses are exempt from the taxes imposed by this chapter:
>
> . . . .
>
> (24) sales of *nonreturnable containers,* nonreturnable labels, nonreturnable bags, nonreturnable shipping cases, and nonreturnable casings to a manufacturer, processor,

wholesaler, or retailer for use in packaging tangible personal property to be sold by that manufacturer, processor, wholesaler, or retailer. . . .

H.B. 279, 50th Leg., 1994 Gen.Sess. (emphasis added).

5.  The machinery and equipment Mount Olympus purchased comprises of a 9–Valve Filler, a Bliss Matic, an Ozone Generator, and an In–Line Screw Capper.

ute in question contains no explicit grant of discretion to the Commission, and we therefore review for correctness the Commission's conclusion that Mount Olympus is not a manufacturing facility entitled to the manufacturing exemption. *See* Utah Code Ann. § 59-1-610(1)(b) (Supp.1993); *Bonneville Int'l v. State Tax Comm'n,* 858 P.2d 1045, 1048 (Utah App.1993). However, we review the factual findings supporting this conclusion under the substantial evidence standard. Utah Code Ann. § 59-1-610(1)(a) (Supp. 1993); *Lassche v. State Tax Comm'n,* 866 P.2d 618, 621 (Utah App.1993).

### B. Section 59-12-104(15)

Section 59-12-104 provides an exemption from sales and use tax for

(15) sales or leases of machinery and equipment purchased or leased by a manufacturer for use in new or expanding operations (excluding normal operating replacements, which includes replacement machinery and equipment even though they may increase plant production or capacity, as determined by the commission) in any *manufacturing facility* in Utah.

Utah Code Ann. § 59-12-104(15) (Supp.1993) (emphasis added). The section goes on to explain:

*Manufacturing facility* means an establishment described in *SIC Codes 2000 to 3999* of the 1987 Standard Industrial Classification Manual, of the federal Executive Office of the President, Office of Management and Budget.

*Id.* (emphasis added). Mount Olympus claims that its activities fall under Classification 2086 of the Standard Industrial Classification Manual (the SIC Manual) and that it is therefore a manufacturing facility.

Classification 2086 lists several products resulting from a manufacturing process.

The product upon which Mount Olympus relies is "*[w]ater, pasteurized:* bottled or canned." [6] The pivotal question, therefore, is whether Mount Olympus pasteurizes its water.

The Commission found Mount Olympus did not pasteurize its water. In reaching this conclusion, the Commission recognized "pasteurization" as a technical term:

[T]he Commission must apply the term "pasteurization" in its strict technical sense. Strictly speaking, the process of pasteurization requires the use of heat as the disinfecting agent. In that sense, Mount Olympus does not pasteurize its spring water, and does not fall within SIC Classification 2086.

We agree with the Commission that Mount Olympus does not pasteurize its water. Webster's defines pasteurization as:

[A] method devised by Pasteur to check fermentation (as in wine or milk) involving the *partial sterilization of a substance* (as a fluid) *at a temperature and for a length of time* that does not greatly change its chemical composition but does destroy many pathogenic organisms and other undesirable bacteria though spores and thermoduric organisms (as lactic acid bacteria) survive.

*Webster's Third New International Dictionary* 1652 (1986) (emphasis added). Expert testimony offered at the hearing before the Commission supports this definition. Mount Olympus's own expert, an analytical chemist, defined pasteurization of water as "the disinfect[ion] of the water *using heat as the killing agent* against the micro-organisms that would be harmful." (Emphasis added.) He further described pasteurization as a process utilizing heat at "160 degrees Fahrenheit for thirty minutes." In contrast, he described the process Mount Olympus employs, which

---

6. Classification 2086, titled "Bottled and Canned Soft Drinks and Carbonated Waters," includes:

Establishments primarily engaged in manufacturing soft drinks (nonalcoholic beverages) and carbonated waters.

Standard Industrial Classification Manual 2086. The classification excludes several products:

Establishments primarily engaged in manufacturing fruit and vegetable juices are classified in Group 203, fruit sirups [sic] for flavoring in

Industry 2087, and cider in Industry 2099. Establishments primarily engaged in bottling natural spring waters are classified in Industry 5149.

*Id.* Finally, the classification lists several products that qualify as "bottled and canned soft drinks and carbonated waters," including "*[w]ater, pasteurized:* bottled or canned." *Id.* (emphasis added).

he referred to as "cold pasteurization," as "a synonym that has come along to describe low level filtration, ultra low level filtration of water."

We refuse to accept Mount Olympus's expansive interpretation of the term "pasteurization" for several reasons. First, randomly defining any disinfecting process whatsoever as "pasteurization" forces courts into the business of determining which processes do or do not amount to pasteurization. This would envelop the presently precise term in needless uncertainty. Other processes, while perhaps attaining the same result as pasteurization, are not pasteurization in its technical sense.

Second, the SIC Manual delineates facilities engaged in manufacturing *pasteurized* water—not water disinfected or sterilized by any high-tech, efficient, or cost-effective method—in its Classification 2086. The Utah Legislature incorporated select provisions of the SIC Manual, including Classification 2086, in section 59–12–104(15). It is not this court's role to second-guess the legislature by determining when a process amounts to pasteurization and thus *should be* included within the incorporated classification.

Finally, tax exemptions are to be narrowly construed. *Parson Asphalt Prod., Inc. v. State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980). An expansive construction of Classification 2086 is therefore particularly inappropriate here.

The statutory directive governing this case is plain. To qualify for a sales tax exemption for purchased machinery and equipment, an establishment must be a manufacturing facility as described in Classifications 2000 to 3999 of the SIC Manual. The only classification potentially applicable to Mount Olympus within this range is 2086. Classification 2086 describes establishments engaged in manufacturing pasteurized water. Mount Olympus does not pasteurize its water. Thus, it does not fit within this classification, nor any other classification that would qualify it as a manufacturing facility. We therefore affirm the Commission's determination that Mount Olympus's purchase of machinery and equipment was subject to sales tax.

## CONCLUSION

The Commission erred in assessing sales tax on Mount Olympus's purchases of, and customers' deposits for, reusable five-gallon water containers. However, the Commission was correct in concluding that Mount Olympus did not qualify for a sales tax exemption on machinery and equipment purchases. We therefore affirm the latter determination and reverse the former.

BENCH and GREENWOOD, JJ., concur.