**STATE of Utah, Plaintiff and Appellee,**

v.

**Mark Stephen MERILA, Defendant and Appellant.**

**No. 971107–CA.**

Court of Appeals of Utah.

Sept. 24, 1998.

---

Linda M. Jones, Salt Lake Legal Defender Assoc., Salt Lake City, for Appellant.

Jan Graham, Atty. Gen. and Barnard N. Madsen, Ass't. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Appellee.

Before DAVIS, P.J., and BENCH and ORME, JJ.

## OPINION

BENCH, Judge:

Defendant, Mark Stephen Merila, a Utah State Prison parolee, was convicted of absconding from parole supervision, a third degree felony, in violation of Utah Code Ann. § 76–8–309.5(2) (Supp.1998). We reverse.

## BACKGROUND

In 1995, defendant obtained parole after serving part of his prison sentence. As a condition of parole, defendant agreed to establish a residence of record and not change his residence without permission from his parole agent. After his release from prison, defendant established his residence at his fiancée's house. Another parole condition required defendant to wear an ankle bracelet for electronic monitoring purposes. A transmitter unit installed at the residence enabled parole agents to monitor defendant's compliance with a 9:00 p.m. curfew.

The monitoring equipment revealed that defendant did not return to the residence until about 5 a.m. on June 4, 1996.[1] That morning, at 7:17 a.m., defendant left a voice-mail message for his parole officer saying that he would be out looking for another job. At 7:45 a.m., the parole officer returned defendant's call, but received no answer. The next evening, at about 10:30 p.m., the parole officer visited the house and did not find defendant there. The parole officer saw clothing that belonged to defendant in the house. Also, defendant's fiancée told the parole officer that defendant still lived at the house. The parole officer told the fiancée that defendant had violated his parole conditions and asked the fiancée to have defendant contact him.

A parole agent responsible for tracking fugitives later sent a letter to defendant's fiancée explaining that the Board of Pardons had issued a warrant for defendant's arrest and sought information regarding his whereabouts. The fiancée received the letter but never provided the requested information. The fiancée did speak to her uncle, a parole officer, who inquired about defendant. She responded that defendant still lived at her house, but came in late at night.

About two weeks later, an informant told a parole officer that defendant would be picking up his fiancée at her workplace later that day. Based on that information, parole officers set up surveillance near the fiancée's workplace and waited for defendant to arrive. As they waited, defendant drove by in the fiancée's vehicle. The agents watched defendant pull the vehicle into a gas station. The agents thereupon pulled several vehicles around the vehicle driven by defendant. One officer left her vehicle, pointed her weapon at defendant, and ordered him out of the vehicle. Nevertheless, defendant drove off with the agents in pursuit. After a high-speed chase, defendant tried to evade the agents by swimming across the Jordan River. One agent pursued and eventually apprehended defendant. Defendant was returned to prison for failing to meet the conditions of his parole. In addition, authorities charged defendant with the crime of absconding from parole supervision.

At his trial on the new charge, defendant moved to dismiss the case for insufficient evidence. The trial court denied the motion and the jury returned a guilty verdict. Defendant now appeals.

## ISSUE and STANDARD OF REVIEW

Defendant argues that the State failed to prove that he changed his residence in violation of the absconding statute. See Utah

---

1. The monitoring equipment was removed later that day, presumably because defendant had disabled the equipment.

Code Ann. § 76–8–309.5(2) (Supp.1998). "We reverse the jury's verdict in a criminal case when we conclude as a matter of law that the evidence was insufficient to warrant conviction." *State v. Smith,* 927 P.2d 649, 651 (Utah Ct.App.1996), *cert. denied,* 937 P.2d 136 (Utah 1997). The Utah Supreme Court has established the standard of review for appeals concerning sufficiency of the evidence:

> "In making the determination as to whether there is sufficient evidence to uphold a conviction, an appellate court does not sit as a second fact finder. It is not the function of a reviewing court to determine guilt or innocence or judge the credibility of witnesses. The mere existence of conflicting evidence, therefore, does not warrant reversal. Rather, the function of a reviewing court is limited to *insuring that there is sufficient competent evidence as to each element of the charge to enable a jury to find, beyond a reasonable doubt, that the defendant committed the crime.*"

*State v. James,* 819 P.2d 781, 784 (Utah 1991) (quoting *State v. Warden,* 813 P.2d 1146, 1150 (Utah 1991)) (emphasis added).

## ANALYSIS

The legislature has not seen fit to give the term "absconding" its usual, more expansive meaning, but rather has defined the offense very precisely. Section 76–8–309.5 of the Utah Code provides as follows:

> (1) An offender absconds from a facility when he:
>
> > (a) leaves the facility without permission; or
> >
> > (b) fails to return at a prescribed time.
>
> (2) An offender absconds from supervision when he willfully changes the residence that he reported as his correct address without notifying his parole officer or obtaining permission.

Utah Code Ann. § 76–8–309.5 (Supp.1998). Thus, two situations arise in which the state may charge a person with absconding. The first, not applicable here, is when the offender absconds from a facility. *See id.* § 76–8–

309.5(4)(a) (defining facility as "a residential facility owned, operated, leased, or contracted by the Department of Corrections or a county to provide housing, programming, or treatment of individuals who have been placed on parole"). The second situation is when the offender absconds from supervision. The elements of absconding from supervision are narrowly defined as when the offender *"willfully changes the residence* that he reported as his correct address without notifying his parole officer or obtaining permission." *Id.* § 76–8–309.5(2) (emphasis added).

"Where statutory language is plain and unambiguous, the appellate courts cannot look beyond the language to divine legislative intent, but must construe the statute according to its plain language." *State v. Paul,* 860 P.2d 992, 993 (Utah Ct.App.1993). The words "willfully changes the residence" all have well established meanings in common usage. The dictionary defines "willful" as "[b]eing in accord with one's will: deliberate." *Webster's II New College Dictionary* 1263 (1995). The dictionary defines "change" as "[t]o make different: alter ... [t]o lay aside, abandon, or leave for another." *Id.* at 186. "Residence" is defined as "[t]he place where one lives." *Id.* at 943.

Under these definitions, the State did not provide sufficient evidence to prove "each element of the charge." *James,* 819 P.2d at 784. Merely establishing defendant's absence from his residence on the few occasions the authorities looked for him, and establishing that defendant fled from the authorities when found, does not prove that defendant had willfully changed his residence.[2] Indeed, the State presented no evidence indicating that defendant had moved from his fiancée's house. Thus, the State failed to establish that defendant had willfully changed his residence.

Because the State failed to provide sufficient competent evidence that defendant absconded from supervision, as narrowly and precisely defined by our legislature, we reverse the conviction. In view of this deci-

---

**2.** That evidence did show that defendant violated the conditions of his parole, which resulted in the revocation of his parole and his return to prison.

sion, we need not address the other arguments raised on appeal.

DAVIS, P.J., and ORME, J., concur.