A. Tom **NELSON** and Trish Topham, Plaintiffs and Appellees,

v.

**SALT LAKE COUNTY,** Defendant and Appellant.

No. 940617.

Supreme Court of Utah.

Nov. 6, 1995.

Kent B. Linebaugh, Jeffrey Devashrayee, Salt Lake City, for plaintiffs.

Gavin J. Anderson, Douglas R. Short, Salt Lake City, for defendant.

RUSSON, Justice:

Salt Lake County appeals from the trial court's order granting A. Tom Nelson and Trish Topham's petition for an extraordinary writ directing Salt Lake County to conduct a municipal incorporation election. We reverse and remand.

## FACTS

In the early part of 1993, residents of an unincorporated area of Salt Lake County known as Cottonwood began circulating petitions to incorporate "The Cottonwoods" as a city. The proposed city is located in the east-central portion of Salt Lake County and includes Cottonwood Mall.

In March 1994, the Salt Lake County Clerk received the petition and verified that it had a sufficient number of signatures to begin the municipal incorporation process. See Utah Code Ann. § 10–2–101.[1] Accordingly, the Clerk certified the petition to the Salt Lake County Board of Commissioners (the Board), which commissioned an indepen-

---

1. Section 10–2–101 states, in pertinent part:
   The petition shall bear signatures equal in number to 25% of all votes cast from the unincorporated area proposed for municipal status at the last congressional election, or 1,000 signatures, whichever is less, except that there must be at least ten signatures from each of at least 50% of the voting districts within the area.

dent study of the feasibility and advisability of incorporating the proposed city. *See id.* § 10–2–102.2 (1992).[2] In July 1994, the study was completed, affirming the feasibility of incorporation.

Subsequently, the Board independently considered a number of factors regarding the advisability and feasibility of the proposed incorporation pursuant to section 10–2–102.6 of the Utah Code. This section provides that the Board, in making its determination, is required to consider numerous factors, including population, topography, extent of business and commercial development, past and projected future growth of the area, present and projected revenues for the county and the proposed municipality, present cost and adequacy of governmental services in the proposed area, and probable effect of incorporation on local government. *Id.* § 10–2–102.6.

In this case, the Board found the determinative factors to be (1) the extent of business, industrial, and commercial development; (2) the present and projected revenues for the county and the proposed municipality; (3) the present cost and adequacy of governmental services in the proposed area; and (4) the probable effect of incorporation on local government. The Board determined that including Cottonwood Mall in the proposed incorporation area would create surplus revenues far in excess of the financial needs of the proposed city and, without including a substantially larger population base, would disproportionately and inequitably impact unincorporated area revenues and services. For example, the Board found that incorporation of the proposed area, including Cottonwood Mall, would result in the transfer of a disproportionate amount of sales tax revenue from the residents of the unincorporated area to the residents of The Cottonwoods. The Board found that if this incorporation was successful, the sales tax revenue for

residents of The Cottonwoods would be approximately $129 per resident per annum, whereas the sales tax revenue for residents of the unincorporated area would be only $26 per resident per annum. Moreover, the Board found that this incorporation would create a precedent for future incorporation to take a disproportionate amount of commercial and business tax base without an equivalent amount of residential property. In short, the Board found that without increasing the residential or population base or eliminating Cottonwood Mall from the proposed city, "the proposed incorporation would be substantially detrimental to the structure of local government in Salt Lake County and otherwise contrary to the public interest." [3]

In September 1994, on the basis of its findings, the Board issued a written order refusing to conduct an election on the proposed incorporation and thereby terminated the incorporation proceedings. In taking this action, the Board relied on language in section 10–2–102.8(2) which states that if the Board determines "that the incorporation proposed would be substantially detrimental to the structure of local government in the county or be otherwise contrary to the public interest ... the board of county commissioners shall issue a written order refusing to hold an election.... If such an order is issued, the incorporation proceedings are terminated...." *Id.* § 10–2–102.8(2) (1992).

Following the issuance of the Board's order, A. Tom Nelson and Trish Topham ("petitioners"), two of the petition's signers, demanded that the Board proceed with the incorporation election. In making their demand, they relied on additional language from section 10–2–102.8(2) which states that "the [Board] must proceed with the election unless a majority of the petitioners withdraw their signatures in writing." Because the Board had failed to determine whether a

---

2. Section 10–2–102.2 provides in pertinent part, "Upon receipt of a petition certified by the county clerk, the board of county commissioners may commission an independent study of the advisability of incorporation and of the feasibility of the proposed municipality by a person or association of persons with expertise in the processes and economics of local government."

3. The Board noted that a smaller incorporation area, excluding Cottonwood Mall, or a much larger area and population base, including the previously proposed Holladay incorporation, might be appropriate.

majority of the original petitioners had withdrawn their support, petitioners demanded that the Board hold the election. The Board, however, maintained that its interpretation of section 10–2–102.8(2) controlled, and thus, it steadfastly refused to proceed with the election.

In October 1994, petitioners filed a summons and petition for extraordinary writ in district court, requesting that the court order the Board to proceed with the incorporation election. Salt Lake County responded by filing a motion to dismiss, but before the hearing on its motion was held, the County moved for summary judgment, alleging that section 10–2–102.8(2) is internally inconsistent and needs clarification. The district court denied both of the County's motions.

In December 1994, the district court issued its final order granting petitioners' extraordinary writ. In its order, the district court stated, "There is no internal inconsistency in the [Utah Municipal Code]" and "the language of the Utah Code Ann. § 10–2–102.8(2) is plain and unambiguous in providing that an Incorporation Election must be held...." Moreover, the district court found that section 10–2–102.8(2) requires that an incorporation election "be held regardless of any determination on the merits of incorporation by the [Board] to the contrary, unless a majority of the petitioners withdrew their signatures in writing." Accordingly, the district court ordered that the Board hold an incorporation election on The Cottonwoods on or before January 7, 1995. Salt Lake County appeals, claiming that the trial court erred in (1) determining that section 10–2–102.8(2) is not internally inconsistent and (2) granting petitioners' extraordinary writ.

## ANALYSIS

■ When reviewing the grant of a petition for an extraordinary writ, the standard of review depends upon the issues presented on appeal. Because this appeal turns on the proper construction of section 10–2–102.8 of the Utah Code, it presents solely a question of law, *State v. 392 South 600 East*, 886 P.2d 534, 537 (Utah 1994), which we review for correctness, granting no particular deference to the trial court's ruling. *World Peace*

*Movement v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994); *accord State v. Wilcox*, 808 P.2d 1028, 1031 (Utah 1991); *Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990).

■ In interpreting section 10–2–102.8(2) of the Utah Code, this court is guided by the principle that a statute is generally construed according to its plain language. *392 South 600 East*, 886 P.2d at 537; *Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1112 (Utah 1991); *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989). We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning. *Versluis v. Guaranty Nat'l Co.*, 842 P.2d 865, 867 (Utah 1992). " 'We must be guided by the law as it is.... When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction.' " *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick*, 890 P.2d 1017, 1020 (Utah 1995) (quoting *Hanchett v. Burbidge*, 59 Utah 127, 135, 202 P. 377, 380 (1921)). "Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations." *World Peace*, 879 P.2d at 259; *see also Schurtz*, 814 P.2d at 1112 ("We first look to the statute's plain language. Only if we find some ambiguity need we look further.").

At issue in the present case is the meaning of section 10–2–102.8(2), which provides:

> If it is determined that the proposal for municipal incorporation is not feasible, *that the incorporation proposed would be substantially detrimental to the structure of local government in the county or be otherwise contrary to the public interest*, or that withdrawal of support from a majority of the petitioners for incorporation is presented in writing, *the board of county commissioners shall issue a written order refusing to hold an election*. The order shall be supported in writing with the reasons for the board of county commissioners' action. If such an order is issued, the incorporation proceedings are terminated.... Notwithstanding the provisions of

Sections 10–2–102.2, 10–2–102.4, 10–2–102.6, and 10–2–102.8, *the board of county commissioners must proceed with the election unless a majority of the petitioners withdraw their signatures in writing.*

Utah Code Ann. § 10–2–102.8(2) (1992) (emphasis added).

The first sentence of section 10–2–102.8 provides that if the Board determines that the municipal incorporation (1) is not feasible, (2) would be substantially detrimental to the structure of local government in the county, (3) would be otherwise contrary to the public interest, or (4) has lost the support of a majority of the petition signers, the Board shall refuse to hold an incorporation election. Thus, this particular sentence grants the Board the power to terminate incorporation proceedings if the Board, in its discretion, determines that any one of these four findings is present. Moreover, while the language grants discretion to the Board in making its initial determination, the first sentence clearly mandates that the Board shall refuse to hold an election if one of the elements is present.

However, the last sentence of section 10–2–102.8 states that notwithstanding the prior provisions, the Board "must proceed with the election unless a majority of the petitioners withdraw their signatures in writing." This sentence is likewise clear in its meaning; it provides that the Board cannot refuse to hold an election unless a majority of the petition signers withdraw their support for the incorporation. This final sentence plainly strips the Board of all discretion. The Board cannot make any determination which will affect the incorporation proceedings; the only event which will stop the proceedings is the withdrawal of support for the incorporation.

Clearly, the first and last sentences of section 10–2–102.8(2) are patently inconsistent. At first blush, it may appear that the last sentence controls because it begins with the word "notwithstanding"; however, such an interpretation would strip the first sentence of all effect and meaning. This court will not construe a statute in such a way as to render certain viable parts meaningless and void. *See Versluis,* 842 P.2d at 867.

Both parties urge this court to turn to legislative history to resolve this conflict. However, as previously noted, this court will resort to legislative history only where the language is ambiguous. *See World Peace,* 879 P.2d at 259; *Schurtz,* 814 P.2d at 1112; *Brinkerhoff,* 779 P.2d at 686. In the present case, the language, although contradictory, is clear and plain on its face. The first sentence of section 10–2–102.8(2) mandates that the Board terminate election proceedings on the happening of any one of four specific events, whereas the second sentence mandates that an election be held unless a majority of the original petition signers withdraw their signatures. To choose which statement controls over the whole would amount to legislation by judicial fiat. "The error made by the Legislature ... is so basic that the courts cannot, by a rule of construction, rectify the mistake." *American Elec. Power Serv. Corp. v. State,* 619 P.2d 314, 315 (Utah 1980). Accordingly, the power to remedy this inconsistency lies within the province of our legislature.

On the basis of the foregoing analysis, we conclude that the trial court incorrectly determined that section 10–2–102.8(2) was not internally inconsistent. Indeed, the underlying statute is so flawed that it is entirely inoperable. Therefore, the trial court could not enter a valid order based upon that section. Consequently, the trial court erred in granting petitioners' extraordinary writ.[4] We reverse.

---

4. Notwithstanding our inability to give effect to section 10–2–102.8, we note that Utah Code Ann. § 10–2–102.10 (1992) does provide an alternative means for appealing decisions by a board of commissioners:

Any person aggrieved by the board of county commissioners' decision may appeal the decision to the district court. The review of the district court, however, is limited to review of the record of the public hearing and the decision of the board of county commissioners may be reversed only upon a showing that the board's decision is arbitrary or capricious or involves an abuse of discretion.

Thus, while we hold that the trial court cannot enter a valid order based on section 10–2–102.8, we express no opinion as to whether petitioners may pursue review under section 10–2–102.10.

ZIMMERMAN, C.J., STEWART, Associate C.J., HOWE, J., and DURHAM, J., concur in RUSSON, J., opinion.