**CITY OF SOUTH SALT LAKE, Town of Alta, City of Draper, Midvale City, Murray City, City of Riverton, Sandy City, West Jordan City, Sharon Brinton, and Linda Norton, Petitioners,**

**v.**

**SALT LAKE COUNTY, Respondent.**

**MIDVALE CITY, a municipal corporation, City of West Jordan, a municipal corporation, and Liane Stillman, Petitioners and Appellees,**

**v.**

**SALT LAKE COUNTY, a body politic, Sherrie Swensen, Salt Lake County Clerk, and Douglas R. Short, Salt Lake County Attorney, Respondents and Appellees.**

**Sherrie SWENSEN, Salt Lake County Clerk, and Salt Lake County, a body politic, Petitioners,**

**v.**

**The Honorable J. Dennis FREDERICK of the Third District Court in his official capacity; City of West Jordan, a municipal corporation; Midvale City, a municipal corporation; and Liane Stillman, an individual, Respondents.**

Nos. 960325, 960330, 960391, 960392 and 960331.

Supreme Court of Utah.

Oct. 18, 1996.

Rehearing Denied Nov. 11, 1996.

Kevin R. Watkins, South Salt Lake, and David L. Church, Salt Lake City, for South Salt Lake, City of Draper, Sandy City, City of Riverton, Murray City, Town of Alta, Sharon Brinton, and Linda Norton.

Douglas R. Short, Gavin J. Anderson, Kent S. Lewis, Dahnelle Burton–Lee, Patrick F. Holden, Salt Lake City, for Salt Lake County parties.

Jody K. Burnett, George A. Hunt, Salt Lake City, and Martin Pezely, Midvale, and Greg Curtis, West Jordan, for Midvale City and City of West Jordan.

Kent B. Linebaugh, Jeffrey Devashrayee, Salt Lake City, for Liane Stillman.

Earl D. Tanner, Sr., Earl D. Tanner, Jr., Anthony L. Rampton, Robert A. Garda, Jr., E. Craig Smay, Salt Lake City, for numerous intervenors.

ZIMMERMAN, Chief Justice:

These matters involve an appeal from a remand to the trial court of a question of statutory interpretation initially brought before this court by a combination of interlocutory appeals and extraordinary writs filed in early August of this year seeking review of a decision of the trial court staying township elections scheduled for August 6, 1996. Although the parties are varied,[1] for purposes

---

1. The parties to this case, all consolidated under Supreme Court No. 960325, are as follows:

**Pre-election cases**

*No. 960325, Petition for Extraordinary Relief:* City of South Salt Lake, Town of Alta, City of Draper, Midvale City, Murray City, City of Riverton, Sandy City, West Jordan City, Sharon Brinton, and Linda Norton v. Salt Lake County, with intervenors Delpha A. Baird, Kent H. Saxey, and Janet Geyser for Holladay Township; White City, for North White City Township and South White City Township; Kearns Township Committee; and various candidates for the Kearns Township Planning and Zoning Board.

*No. 960330, Petition for Interlocutory Appeal:* City of West Jordan, Midvale City, and Liane Stillman v. Sherrie Swensen, Salt Lake County Clerk, Douglas R. Short, Salt Lake County Attorney, and Salt Lake County, with intervenor Kearns Township Committee.

*No. 960331, Petition for Extraordinary Relief:* Sherrie Swensen, Salt Lake County Clerk, and Salt Lake County v. The Honorable Judge J. Dennis Frederick, in his official capacity, City of West Jordan, Midvale City, and Liane Stillman.

**Post-election cases**

*No. 960391, Petition for Interlocutory Appeal:* Liane Stillman v. Salt Lake County; Sherrie Swensen, Salt Lake County Clerk; and Douglas R. Short, Salt Lake County Attorney.

*No. 960392, Petition for Interlocutory Appeal:* City of West Jordan and Midvale City v. Sherrie Swensen, Salt Lake County Clerk, and Salt Lake County.

Further, after the election, the parties filed various motions, including Holladay Township's

of discussion the cases may be lumped into two categories: (i) the Holladay and Kearns Township election litigation, involving the City of West Jordan and those aligned with it,[2] i.e., those with pending annexation or incorporation petitions in the proposed Holladay and Kearns Township elections; and Salt Lake County and those aligned with it;[3] and (ii) the other eight township elections, involving the City of South Salt Lake and those aligned with it;[4] and Salt Lake County. One issue was common to all ten township elections: as to eight of them, it was the only issue. That question is the class of persons from which a majority must be drawn for the township proposal to carry. Does section 17–27a–104(2)[5] of the Utah Code, enacted in 1996, require a majority of all the registered voters within the area proposed for township status or only a majority of the registered voters in the area who actually voted? In the Holladay Township election, the Kearns Township election, and the litigation pertaining to them, other questions were raised regarding the propriety of Salt Lake County's failure to deal with the following issues prior to the township elections: (i) Midvale City's proposed annexation of a part of the proposed Holladay Township; (ii) a petition to incorporate the city of "The Cottonwoods" in a part of the proposed Holladay Township; and (iii) the City of West Jordan's proposed annexation of a part of the proposed Kearns Township.

In an order issued on August 6, this court granted an interlocutory appeal; treated a petition for extraordinary relief as a petition for declaratory judgment; stayed the trial court's order blocking the August 6, 1996,

elections; and directed that the elections proceed in the ten Salt Lake County township areas which were the subject of the legal actions, but that the ballots pertaining to all ten elections be sealed, stored, and not counted until further order of this court. The interlocutory appeal and the petition for extraordinary relief were both remanded to the trial court for further proceedings and a determination of all claims. We directed that these cases be consolidated before a single judge. We also directed that the one question common to all ten township elections be decided within thirty days so that the matter could be brought back to this court for resolution.

The elections were held and the ballots sealed as directed by this court. On remand, the district court concluded that the language of section 17–27a–104(2) was ambiguous and that it should be interpreted to require a simple majority of those actually voting to form a township. The City of West Jordan, Midvale City, and those representing the proposed city of The Cottonwoods filed petitions for interlocutory appeal in this court; the Holladay Township petitioners filed a motion to lift stay; the Emigration Township Committee filed a motion to amend interim order; the Magna, Granite, White City, and Emigration Community Councils filed a motion to open and count ballots; and Salt Lake County filed a motion to amend order. Because the district court's ruling applied to all ten township elections, interlocutory appeals were taken in the cases of the proposed Holladay Township and the proposed Kearns Township, where other issues still remain

---

motion to lift stay; Emigration Township's motion to amend interim order; a motion to open and count ballots or expedite appeal filed by the community councils of Magna, Granite, White City, and Emigration; and Salt Lake County's motion to amend order.

**2.** This category includes Midvale City and Liane Stillman, sponsor of the proposed city "The Cottonwoods."

**3.** This category includes the various township committees and township sponsors who have intervened in these matters: Kearns Township Committee, Candidates for Kearns Township Planning and Zoning Board, Emigration Township Committee, Emigration Community Council, Holladay Township Petitioners, Magna Com-

munity Council, Granite Community Council, and White City Community Council.

**4.** This category includes the proposed townships in Copperton, Emigration Canyon, Granite, South Granite, Magna, Southwestern, North White City, and South White City.

**5.** This section was misnumbered in the enrolled copy of HB 120 but was correctly designated as Utah Code Ann. § 17–27a–104(2) in the 1996 Supplement to the Utah Code. *Compare* Local Government Changes, ch. 308, § 11, 1996 Utah Laws ___ *with* Utah Code Ann. § 17–27a–104(2) (Supp.1996).

before the trial court. Consequently, we have before us a direct appeal in those cases where no other issues remain and an interlocutory appeal in the cases of the proposed Kearns and Holladay Townships. This court then directed that the question of the appropriate interpretation of 17–27a–104(2) be briefed on an expedited basis and heard as quickly as possible. The matter was argued on October 1, 1996.

We now hold that section 17–27a–104(2) is not ambiguous and requires that a majority of all registered voters within the area proposed for township status must vote in favor of the proposal. A simple majority of those casting ballots is insufficient under the statute. Accordingly, we reverse the district court and remand for further proceedings the matters involving the proposed annexations by Midvale and West Jordan and the proposed Cottonwood incorporation. Our order of August 6, 1996, is modified to direct that the county clerk proceed to count the ballots in the township elections concerning which no legal issues remain before the district court. We further direct the district court to consider whether it wishes to permit the ballots to be counted in the two township elections which still remain before it, to wit, those involving the Midvale and West Jordan annexations and the proposed Cottonwood incorporation. If the trial court concludes that those ballots should be counted before this litigation is entirely resolved, it may so order. Our order of August 6 will remain in effect as to the Holladay and Kearns township elections until the matter is addressed by the district court.

[1, 2] Moving to the merits: The district court granted the County's motion for summary judgment. In reviewing a grant of summary judgment, " 'we accord no deference to the trial court's resolution of the legal issues presented.' " *Harline v. Barker*, 912 P.2d 433, 438 (Utah 1996) (quoting *K & T, Inc. v. Koroulis*, 888 P.2d 623, 627 (Utah 1994)). The proper interpretation of section 17–27a–104(2) is a matter of law to be resolved by this court. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994); *Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1112 (Utah 1991). That statute provides that "[i]f a majority of

the registered voters within the area proposed for township status vote in favor of the proposal, the area shall immediately acquire township status as provided in this part." The City of West Jordan contends that the statute is clear: It requires affirmative votes of a majority of *all* registered voters within the area proposed for township status.

The County contends that these words should not be read literally because in virtually all situations, elections are determined by a majority of the votes actually cast, not by a majority of those entitled to vote. The County argues that we should therefore interpret the statute as though it read that "[i]f a majority of the registered voters within the area proposed for township status [*who actually cast ballots* ] vote in favor of the proposal, the area shall immediately acquire township status as provided in this part." (Proposed additional language bracketed.) In support of its arguments, the County cites some expressions of sentiment by selected legislators made during the final part of the 1996 session, when this provision was first proposed and quickly enacted. The County also argues that its interpretation accords with our decision in *Nowers v. Oakden*, 110 Utah 25, 169 P.2d 108 (1946), where we interpreted a statute requiring the passage of a county fence ordinance by a "majority of all the legal voters" in the county to include only a majority of those actually voting. For the reasons described below, we reject both arguments.

■ The applicable principles of statutory construction are clear. "We look first to the plain language of the statute to discern the legislative intent.... 'Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy consideration.' " *Gohler v. Wood,* 919 P.2d 561, 562–63 (Utah 1996) (quoting *World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994)); *accord Schurtz,* 814 P.2d at 1112. A review of the plain language of the statute in question reveals no ambiguity. The words "a majority of registered voters within the area proposed for township status" are clear and unambiguous. *Black's Law Dictionary* defines "registered voters"

as "[p]ersons whose names are placed upon the registration books provided by law as the record or memorial of the duly qualified voters of the state or county." *Black's Law Dictionary* 1284 (6th ed.1990). The term "registered voters" is not of uncertain meaning and is used in many of our statutes to define a class of persons. *See, e.g.,* Utah Code Ann. §§ 10–2–109, 10–3–1203, 17A–2–409, 17A–2–1166, 20A–9–404. Because the statute is unambiguous on its face, no inquiry into the legislative history or policy concerns underlying the statute is necessary.

The County contends that applying the statute as written would create an absurd result. Specifically, it contends that because of deaths and moves on any given day, it may be impossible to be absolutely certain whether the registration rolls actually reflect the names of those entitled to vote. Therefore, it argues that we must conclude that there is ambiguity here and reach a construction that the County would prefer, to wit, a simple majority of those casting ballots. We find nothing inherently absurd in the result dictated by the plain language of the statute. "Registered voters" means those registered, not those eligible to register. The term fixes with reasonable certainty the membership of the class. Any inadequacy in county record keeping cannot be used to justify rejecting the legislature's choice of the class of persons to be counted.

There are other situations in the context of the creation or modification of boundaries of local government units where the outcome is, at some stages, determined by reference to a majority of registered voters, as opposed to those actually voting. For example, the statute providing for the creation of a town requires a petition signed by a majority of the registered voters of an unincorporated area proposed for incorporation as a town. Utah Code Ann. § 10–2–109. The difficulties the County raises are equally applicable and equally irrelevant to the validity of that statute and to this. We therefore find nothing inherently infeasible in the legislature's choice of all registered voters as the class of

persons from among whom a majority must be garnered to create a township.

And there are other instances in statute where the creation or enlargement of local government units depends upon the favorable opinions of a class of persons other than a simple majority of those casting ballots. For example, House Bill 120, which passed during the 1996 session and which contained not only the language at issue in this case but also provisions amending other portions of the incorporation and annexation statutes, contains a provision adding section 10–2–102.3 to the Code.[6] This section pertains to the exclusion of certain property from an area proposed for annexation. Exclusion can be obtained by a petition containing "the legal signatures of over 50% of the owners of real property and the owners of at least 1/3 of the value of real property, as shown on the last assessment rolls, in each voting precinct within the area to be excluded." Plainly, the legislature has by this section permitted a group of property owners which is likely to be far smaller than a majority of the registered voters in the area in question to determine the outcome of a selection of the mode of government affecting that area.

Accordingly, it is equally appropriate that we defer to the legislature's choice of language in section 17–27a–104(2), defining the class from which a majority of votes must be drawn to create a township. The legislature is entitled to a range of choices as to how issues concerning the formation or expansion of local government units are to be decided. There is no rule that a majority of those voting wins. It is not our place to conclude that because the choice of all registered voters as the relevant class in section 17–27a–104(2) is somewhat unusual, the legislature must have made a mistake. Moreover, easily presuming a mistake, as the County does, seems particularly inappropriate when the legislature's creation of this new form of local government unit—the township—was done in the context of what we can judicially notice was intense debate and discussion, within the legislature and without, over the relative

---

6. *See* Local Government Changes, ch. 308, § 3, 1996 Utah Laws ___. This legislation was enacted in response to our 1995 decision in *Nelson v. Salt Lake County,* 905 P.2d 872 (Utah 1995), in which we declared certain provisions of section 10–2–102.8 inoperable. *Id.* at 876.

roles of citizens in unincorporated areas, the county government, and the local municipalities, and their relative orders of priority in local government matters. This debate ensued after our decision in *Nelson v. Salt Lake County*, 905 P.2d 872 (Utah 1995), where we declared inoperative certain provisions of section 10–2–102.8, which pertained to the incorporation of new municipalities. *Id.* at 876. In light of this intense political debate, it would be presumptuous of us to assume that the resulting legislation did not reflect the intention of the legislature.

The County relies heavily on this court's decision in *Nowers v. Oakden*, 110 Utah 25, 169 P.2d 108 (1946), where we interpreted a county ordinance that required a vote of "the majority of all the legal voters" in the county before a local fence law could be enacted. In that case, we held valid a county election, the results of which established a fence law by a majority of those voting, despite the plaintiff's contention that the statute providing for such elections required approval by a majority of all voters in the county qualified to register to vote. *Id.* 169 P.2d at 114, 118. The County argues that our opinion in that case requires us to hold today that the term "registered voters" means "registered voters voting in the election," just as we held the term "legal voters" to mean "legal voters voting in the election" in *Nowers*. We conclude that *Nowers* is distinguishable from the present case.

The term "legal voters" was one capable of multiple interpretations. The plaintiff in *Nowers* contended that the county was required to hold a special-election registration so that all voters who met the requirements for registration ("legal voters") could vote in the special election. *Id.* at 117. The county had simply used the voter registration lists in effect at the time of the last general election. *Id.* The court resolved this ambiguity in favor of the county, determining that "[n]o showing was made in the court below that non-registered legal voters in sufficient number to

change the result, or at all, were deprived of the right to vote at the election in question." *Id.* at 118. Thus, the court in *Nowers* was presented with a statutory ambiguity which is not present here.[7] The statute here uses the term "registered voters," a term that is common and of clear meaning.

The remaining issue before the court is raised by the City of West Jordan. It argues that if we hold for the County, we must reach the question of whether the notice of election issued by the County misled voters. Specifically, it is argued that the notice incorporated by reference section 17–27a–104(2) and thereby informed potential voters that unless a majority of all registered voters approved the petition, it would fail. This may have induced some voters to stay home and thereby distort the results of the actual balloting. Because we resolve this case against the County's claims, we find no defects in the notice of election. It properly referred to the statute which required a majority of all registered voters to approve the petition. This notice was not defective.

In light of the foregoing, we rescind that portion of our August 6, 1996, order to the extent that it forbade the counting of the ballots in those township elections where the only issue in litigation was the class of persons from whom a majority of votes needed to be obtained. However, as to the cases involving the Holladay and Kearns township elections, which raise questions regarding the proper processing of the annexation and incorporation petitions pending at the time the township elections were held, cases numbered 960325, 960330, and 960331, we leave our order of August 6, 1996, in place. All cases before us are remanded to the Third District Court. The judge of that court to whom these matters are assigned may, following consideration of the question whether the stay should remain in effect for the duration of that litigation, modify or lift the provisions of our August 6, 1996, order as it

---

7. We also note that in *Nowers*, the issue before the court was only the mechanism for approving a fencing ordinance, not the creation of a new form of local government. Moreover, in *Nowers* we were asked to set aside an election that had already been held so that more voters could be

qualified in an attempt to change the result. In the present case, the balloting has occurred but no one is aware of the results. Therefore, we are not being asked to set aside an election by the losers.

applies to the Holladay and Kearns township elections.

We wish to take this opportunity to thank the district court and the parties and their counsel for the speedy and cooperative manner in which this litigation has proceeded. Although feelings plainly ran high, all behaved with courtesy and acted with celerity.

HOWE, DURHAM, and RUSSON, JJ., concur in Chief Justice ZIMMERMAN'S opinion.

STEWART, Associate C.J., concurs in the result.