2000 UT 85

**In re WEST SIDE PROPERTY ASSOCI-
ATES, a Utah limited partnership fka
Westgate Business Center Associates, a
Utah limited partnership, dba Westgate
Business Center, Debtor.**

No. 981425.

Supreme Court of Utah.

Oct. 27, 2000.

Peter Watson Billings, Jr., Gary E. Jubber, Salt Lake City, for West Side Property Associates.

David E. Yocum, Mary Ellen Sloan, Salt Lake City, for Salt Lake County.

RUSSON, Associate Chief Justice:

¶ 1 This case is before us on certification from the United States Bankruptcy Court for the District of Utah Central Division. The

federal bankruptcy court has asked us to rule on the following two questions of Utah law:

1. Does Salt Lake County's assessment of property tax on a building omitted from West Side Property Associates' tax assessment notices for 1992 through 1996, when other buildings and the land were assessed, constitute an escaped property assessment as defined by Utah Code Ann. § 59–2–102(8)(a)(i).[1]

2. If Salt Lake County's assessment is a valid escaped property assessment, upon what date was the tax incurred.

## BACKGROUND

¶ 2 West Side Property Associates ("West Side") owns and operates the Westgate Business Center ("Westgate property"), an office complex located at the northwest corner of 200 South and 300 West in Salt Lake City, Utah. The property consists of four office buildings and the underlying land.

¶ 3 On February 3, 1997, West Side filed a voluntary petition under chapter 11 of the United States Bankruptcy Code. *See* 11 U.S.C.A. §§ 1–1330 (1993). Thereafter, the bankruptcy court fixed August 4, 1997, as the deadline for filing proofs of claims by governmental units.

¶ 4 Accordingly, Salt Lake County (the "County") filed a claim against the Westgate property on May 13, 1997, for $51,636.62 in 1996 unpaid taxes, penalties, and interest. The bankruptcy trustees paid this amount to the County on August 15. On November 25, the bankruptcy court ruled that this payment fully satisfied the County's May 13 claim.

¶ 5 On August 19, 1997, the County conducted a reappraisal of all downtown Salt Lake City properties. This reappraisal included the Westgate property. The County alleges that upon conducting this reappraisal, the appraiser noticed that a building on the Westgate property had not been included on the tax rolls for several years. The apprais-

er identified this building as the Fine Arts building.

¶ 6 The tax ledgers show that the Westgate property was always assessed as a single property (parcel number 15–01–129–025) that was given an accurate legal description and then a separate tax calculation for "real estate" and one for "buildings." The buildings that comprised the category of "buildings" were not described on the tax ledgers. Similarly, the tax notices sent to West Side showed an accurate legal description for the property and a separate tax calculation for "real estate" and one for "buildings," but no description of the buildings comprising the category of "buildings." Detailed information describing the land and separate buildings is found only in the County's printouts for parcel listings.

¶ 7 On September 2, 1997, the County sent a notice to West Side claiming that the Fine Arts building was "escaped property" and that taxes for the years 1992 through 1996 were owed by November 30. These taxes amounted to $27,142.74. The notice also advised West Side that it could appeal the valuation by October 9, 1997. West Side neither paid nor appealed the tax valuation.

¶ 8 On March 6, 1998, the County moved for an allowance of administrative expense claim pursuant to 11 U.S.C.A. § 503(b)(1)(B)(i), (C).[2] The County based this claim on its escaped property assessment that West Side had not paid. West Side opposed the County's claim, arguing, inter alia, that the property was not escaped property but had been undervalued instead.

¶ 9 Thereafter, pursuant to rule 41 of the Utah Rules of Appellate Procedure, the County moved to have the bankruptcy court certify issues of state law to this court. The bankruptcy court decided that before it could rule on the County's administrative claim, it was necessary to determine whether the County's assessment was valid and, if valid,

---

1. Throughout this opinion, we will use the statutes in effect at the time of the events at issue. The statute defining escaped property in this case is Utah Code Ann. § 59–2–102(7) (Supp.1996) (now codified at Utah Code Ann. § 59–2–102(11) (Supp.2000)).

2. These provisions of the bankruptcy code allow claims for taxes and related penalties incurred by the estate of a debtor even after the bankruptcy notice and hearing.

when the liability was incurred. Thus, the bankruptcy court certified the above-mentioned two questions to this court.

## JURISDICTION

¶ 10 "The Supreme Court has original jurisdiction to answer questions of state law certified by a court of the United States." Utah Code Ann. § 78–2–2(1) (1996); *see also* Utah R.App. P. 41.

## ANALYSIS

### I. CERTIFICATION TO STATE COURT

¶ 11 The practice of certifying questions of state law to a state supreme court is a fairly recent device that arose from the judge-made doctrine of abstention, whereby a federal court would abstain until the state court had resolved the state questions. *See generally* 17A Charles Alan Wright et al., *Federal Practice and Procedure: Jurisdiction 2d* §§ 4241–4244, 4246, 4248 (1988). Abstention developed from the doctrine that a federal court "will not 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Clay v. Sun Ins. Office Ltd.,* 363 U.S. 207, 211, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960) (quoting *Liverpool, N.Y. & Philadelphia Steamship Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)); *see also Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 498, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Therefore, if a federal constitutional question relied on the determination of an uncertain issue of state law, abstention was believed to be the proper course " 'to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.'" *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 511, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) (quoting *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965)). In *Lehman Bros. v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974), the United

States Supreme Court noted that if state certification procedures were available, a federal court should use its discretion in deciding whether to certify an unclear issue of state law even if no constitutional issues were raised. *See id.* at 390–91, 94 S.Ct. 1741; *cf. Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 483–84, 60 S.Ct. 628, 84 L.Ed. 876 (1940) (holding that bankruptcy courts should always submit unsettled questions of state property law to state courts). Additionally, the Court emphasized that the use of certification would "save time, energy, and resources and help[ ] build a cooperative judicial federalism." *Lehman Bros.,* 416 U.S. at 391, 94 S.Ct. 1741.

¶ 12 Consequently, the Tenth Circuit Local Rules provide for the discretionary use of certification when state law permits. *See* 10th Cir. R. 27.1(A); *see also Hogan v. Oklahoma Dep't of Corrections,* No. 98–6127, 1999 WL 84466, at *2, 1999 U.S.App. LEXIS 2896, at *5 (10th Cir. Feb. 22, 1999); *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1149 (10th Cir. 1982). However, initially, the Utah Constitution did not provide the supreme court with original jurisdiction to answer questions certified from federal courts. *See Holden v. N L Indus., Inc.,* 629 P.2d 428, 429–30 (Utah 1981). Thereafter, portions of the Utah Constitution were repealed and reenacted,[3] and section 78–2–2[4] of the Utah Code was revised to provide the Utah Supreme Court with original jurisdiction to answer questions of state law certified from federal courts.

¶ 13 In formulating the wording of the questions to be certified, a few federal courts ask counsel for both sides to provide assistance. *See* 17A Wright, *supra* ¶ 11, § 4248, at 176. However, most courts prepare the questions themselves without input from counsel which has, at times, led to the wrong questions being asked. *See id.* at 177. Therefore, federal courts have adopted the common practice of emphasizing that the particular phrasing of the question should not restrict the state court from reformulating the question as it sees fit. *See id.* at 178.

---

3. *See* Utah Const. art. VIII, § 3 (repealed and reenacted by Judicial Article Revision, S.J.R. 1, 1984 Utah Laws 2d S.S. 268, 269).

4. *See* Utah Code Ann. § 78–2–2(1) (repealed and reenacted by Judicial Article Implementation, ch. 47, § 41, 1986 Utah Laws 115, 135).

Additionally, most state courts, including Utah, will reformulate the question if necessary regardless of whether the federal court has expressly stated this in the certification. *See id.; see also Richardson v. Navistar Int'l Transp. Corp.*, 2000 UT 65, ¶¶ 8–9, 8 P.3d 263 (noting that question as phrased was ambiguous and therefore giving answer only with respect to specific facts of case at hand); *Hirpa v. IHC Hosps., Inc.*, 948 P.2d 785, 787 n. 1 (Utah 1997) (selecting version of questions that better characterized legal issues to be resolved); *Peterson v. Browning*, 832 P.2d 1280, 1281 (Utah 1992) (rewording single certified question into two distinct questions). We find it necessary to reformulate the first certified question in the instant case.

■ ¶ 14 The federal bankruptcy court has asked us whether a building "omitted" from a tax assessment notice constitutes escaped property. In wording the question thus, the bankruptcy court has made the legal conclusion that the building was omitted property which necessarily makes it escaped property since escaped property is defined as omitted property.[5] This would mean that there is no unclear issue of state law for us to address, and therefore, the exercise of certification would be futile. Instead, the proper question to be answered in the case before us is as follows:

> If West Side Property Associates' tax assessment notices for 1992 through 1996 gives a separate tax calculation for "real estate" and for "buildings," and "buildings" does not accurately represent the number of buildings on the property, does this constitute undervaluation or escaped property?

We answer the second certified question as presented to us.

## II. UNDERVALUATION OR ESCAPED PROPERTY

¶ 15 The County Board of Equalization of Salt Lake County argues on appeal that the Fine Arts building is an improvement that was inadvertently omitted from the tax rolls and should thus be assessed as escaped property. West Side counters that the entire Westgate property, as referenced by its legal description and described as "real estate" and "buildings," may have been undervalued due to an inaccurate representation of the improvements designated as "buildings," but not from an omission in the property subject to assessment.

¶ 16 The Utah Property Tax Act (the "Act") provides that "[a]ll tangible taxable property shall be assessed and taxed at a uniform and equal rate on the basis of its fair market value, as valued on January 1, unless otherwise provided by law." Utah Code Ann. § 59–2–103(1) (Supp.1996). Under the Act, the legislature has delegated to the county assessor the power to assess all property located within the County that is not otherwise required to be assessed by the tax commission. *See id.* § 59–2–301 (1992). In addition, the assessor is required to list all of the property and maintain an appraisal record that includes the owner of the property, the property identification number, a description of the property, the location of the property, and the full market value of the property. *See id.* § 59–2–305; Utah Admin. Code R884–24P–37(A). The appraisal record must also separately show the value of the land and the value of any improvements. *See* Utah Admin. Code R884–24P–37(B).

¶ 17 In order to collect the property taxes each year, the county treasurer must furnish each taxpayer with a tax notice. *See* Utah Code Ann. § 59–2–1317(2)(a) (Supp.1996). That notice is required to contain, among other things, the property identification number, the street address, the kind of property assessed, the appraised value of the property, and the amount of tax levied. *See id.;* Utah Admin. Code R884–24P–36(A).

¶ 18 To be sure property taxes are current,

> (1) [e]ach year the commission shall conduct an investigation throughout each county of the state to determine *whether all property subject to taxation is on the assessment rolls, and whether the property is being assessed at fair market value.* When, after any investigation, it is found

---

5. *See* Utah Code Ann. § 59–2–102(7)(a)(i)(ii) (Supp.1996) (defining escaped property as "any property . . . or any improvements to the property . . . omitted from the tax rolls").

that any property which is subject to taxation is not assessed, then the commission shall direct the [assessing authority] to enter the assessment of the escaped property.

(2) If it is found that any property in any county is not being assessed at its fair market value, the commission shall, for the purpose of equalizing the value of property in the state, increase or decrease the valuation of the property in order to enforce the assessment of all property subject to taxation upon the basis of its fair market value, and shall direct the [assessing authority] to correct the value of the property in a manner prescribed by the commission.

Utah Code Ann. § 59–2–1008(1), (2) (1992) (emphasis added). Therefore, the assessor must annually determine if any property has been undervalued or has escaped valuation.

¶ 19 Escaped property is defined, in pertinent part, as "any property, whether personal, land, or any improvements to the property, subject to taxation [that] is: (i) inadvertently omitted from the tax rolls." Utah Code Ann. § 59–2–102(7)(a)(i) (Supp. 1996). Improvements include the buildings and structures erected on or affixed to the land. *See id.* § 59–2–102(12). Undervaluation has not been defined by the legislature.

¶ 20 The legislature has authorized the original assessing authority, at any time as far back as five years prior to discovery, to assess any property that qualifies as escaped property. *See id.* § 59–2–309(1) (1992). In addition, the assessors are authorized to increase assessments that have been undervalued. *See id.* § 59–2–1008(3).

■ ¶ 21 When we interpret statutes, we "give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve." *State v. Burns,* 2000 UT 56, ¶ 25, 4 P.3d 795. Furthermore, it must be remembered that " 'statutes imposing taxes and prescribing tax procedures should generally be construed favorably to the taxpayer and strictly against the taxing authority.' " *County Bd. of Equalization v. Nupetco Assocs.,* 779 P.2d 1138, 1139 (Utah 1989) (quoting *Builders Components Supply Co. v.*

*Cockayne,* 22 Utah 2d 172, 175, 450 P.2d 97, 99 (1969)).

■ ¶ 22 Land and improvements are recognized as separate constituents, and therefore, each element is subject to separate assessment and taxation. *See* Utah Code Ann. § 59–2–102 (Supp.1996) (defining real estate separately from improvements); *see also County Bd. of Equalization v. State Tax Comm'n ex rel. Sunkist Serv. Co.,* 789 P.2d 291, 293 (Utah 1990). However, if an improvement is shown on the tax assessment notice, reassessment of the improvement is prohibited. *See Sunkist,* 789 P.2d at 294; *Nupetco,* 779 P.2d at 1139 (holding that because entire property was included by means of accurate legal description, acreage mistake constituted undervaluation of assessed property, not escape in assessment); *see also Chicago Gravel Co. v. Rosewell,* 103 Ill.2d 433, 83 Ill.Dec. 164, 469 N.E.2d 1098, 1100 (1984) (holding that "property which has been assessed, and upon which taxes have been levied and paid in their entirety, even though the assessment through mistake was too low, may not be reassessed in a subsequent year as omitted"); *In re National Tube Co.,* 98 N.E.2d 78, 89 (Ohio Bd. Tax App.1950) (holding that building and structures included in "buildings" valuation without being separately detailed were to be assumed assessed and therefore not omitted). "[F]or an improvement to qualify as an escaped property rather than an underassessed property, the tax assessment notice must not list the improvement." *Sunkist,* 789 P.2d at 294.

¶ 23 Even though *Sunkist* relied on an earlier escaped property statute, Utah Code Ann. § 59–5–17 (1974), *Sunkist* is consistent with the statute governing this case, Utah Code Ann. § 59–2–102(7)(a)(i) (Supp.1996), and is therefore still applicable. *Sunkist* recognized that land and improvements were subject to separate assessment and taxation and that any property that had not been assessed was escaped property. *See Sunkist,* 789 P.2d at 293. Similarly, section 59–2–102(7)(a)(i) provides that any property, whether land or improvements, inadvertently

omitted from the tax rolls is escaped property.

■ ¶ 24 In the instant case, the assessment notice for West Side included an accurate legal description that encompassed the entire parcel. The assessment specified a value for "real estate" and a separate value for the improvements designated as "buildings." The category of "buildings" did not detail the number of structures included, but provided a value for all of the buildings on the property. As previously stated, "[f]or an improvement to qualify as an escaped property rather than an underassessed property, the tax assessment notice must not list the improvement." *Sunkist*, 789 P.2d at 294. The improvements "buildings" were assessed, and the taxes were levied. West Side relied on this assessment to be correct. A mistake may have led to an assessment of the improvements that was too low, but "buildings" cannot be reassessed.

¶ 25 Because the County's assessment is not a valid escaped property assessment, we need not address the second question certified to us by the bankruptcy court.

## CONCLUSION

¶ 26 Salt Lake County's error resulted in an undervaluation of the improvements assessed as "buildings," but it did not amount to escaped property.

¶ 27 Justice DURHAM and Justice DURRANT concur in Associate Chief Justice RUSSON's opinion.

HOWE, Chief Justice, dissenting:

¶ 28 I respectfully dissent from the majority's analysis of escaped property and would advise the bankruptcy court to employ the guidelines set out in this dissenting opinion for determining whether the Fine Arts Building constituted an escaped property.

¶ 29 The majority bases its opinion on this court's decision in *County Board of Equalization v. State Tax Commission of Utah ex rel. Sunkist Service Co.*, 789 P.2d 291 (Utah 1990), and specifically relies on the following language:

Thus, for the improvement to qualify as an escaped property rather than an underassessed property, the tax assessment notice must not list the improvement. If the improvement is underassessed but shown on the assessment notice, the statute prohibits the reassessment of the improvement.

*Id.* at 294 (citing *County Bd. of Equalization v. Nupetco Assocs.*, 779 P.2d 1138, 1139 (Utah 1989) (holding mistake in acreage on tax assessment was not escaped property)). Thus, the majority would hold that if the heading "Buildings" appears on the assessment notice, any building not included must constitute undervalued and not omitted property, and therefore cannot be an escaped property. I disagree.

¶ 30 First, this court's decision in *Sunkist* was governed by the 1974 version of the code, which did not define escaped property. The statutory provision in effect at the time of the events in this case, Utah Code Ann. § 59–2–102(8)(a)(i) (Supp.1996), defines escaped property to mean "any property ... or any improvements to the property ... inadvertently omitted from the tax rolls."

¶ 31 A fundamental rule of statutory interpretation is that we must first look to the plain language of the statute to determine legislative intent. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998); *Chris & Dick's Lumber & Hardware v. Tax Comm'n*, 791 P.2d 511, 514 (Utah 1990). We must also give every word meaning and effect, *see Nelson v. Salt Lake County*, 905 P.2d 872, 875 (Utah 1995), and avoid any interpretation that renders parts or words in a statute inoperative or superfluous, *see A.C. Fin., Inc. v. Salt Lake County*, 948 P.2d 771, 779 (Utah 1997); *State v. Hunt*, 906 P.2d 311, 312 (Utah 1995).

¶ 32 The key phrase in the statutory definition of escaped property is "any property ... or any improvements." *Black's Law Dictionary* defines "any" as "one indiscriminately of whatever kind or quantity." *Black's Law Dictionary* 86 (5th ed.1979); *see also Mt. Olympus Waters, Inc. v. Utah State Tax Comm'n*, 877 P.2d 1271, 1273–74 (Utah Ct.App.1994) (applying above-mentioned *Black's* definition of "any" to tax code).

"Any" has also been described as "[o]ne or another without restriction or exception." *Webster's II New Collegiate Dictionary* 51 (1995). Thus, "escaped property" can mean *any* property or *any* improvement that has been inadvertently omitted from the tax rolls. *See* § 59–2–102(8)(a)(i). "Improvements" include "all buildings ... erected upon or affixed to the land." § 59–2–102(12). The Fine Arts Building is a building erected upon the land. The definition does not provide exceptions where other improvements are included on the assessment, or where there is a general heading on the assessment notice for "Buildings." Such exceptions should not be read into the statutory definition.

¶ 33 Second, section 59–2–102(8)(a)(i) defines escaped property as "any property ... inadvertently omitted from the *tax rolls.*" (Emphasis added.) Section 59–2–102(25) defines tax roll as:

> a permanent record of the taxes charged on property, as extended on the assessment roll and may be maintained on the same record or records as the assessment roll or may be maintained on a separate record properly indexed to the assessment roll. It includes tax books, tax lists, and other similar materials.

Thus, tax rolls encompass much more than just a tax assessment notice. This court clearly stated in *Sunkist* that we made our determination on the "complete absence of any valuation for the building on the *tax roll or assessment notice.*" *Sunkist*, 789 P.2d at 294 (emphasis added). This ruling should not be construed so narrowly as to hold that the tax assessment notice is the only determinative factor, and that as long as the separate headings of "Real Estate" and "Buildings" are listed on a tax assessment notice, any real property or building is precluded from ever being escaped. The only cases the majority cites in support of its position are from other jurisdictions and are interpreting different statutory language.

¶ 34 I would hold that the bankruptcy court should look further to the tax rolls to determine whether or not the Fine Arts Building actually appeared on any tax book, list, or other record indexed to the property.

We have multiple tax documents before us in this case regarding the Westgate Business Center. While some list only the broad categories of "Real Estate" and "Buildings," one of the documents, the Parcel Listing, lists not only the legal description of the real estate, but detailed information on each of the buildings on the real estate. The only year for which we have a parcel listing is 1997, after the omitted property had been found and reported on the listing. We do not have in front of us this part of the tax rolls during the disputed years of 1992 to 1996. From those lists, it would be clear whether the Fine Arts Building was considered when the tax was levied, or if it was omitted and therefore escaped assessment. The statute clearly directs us to the tax rolls, and so does the plain language in *Sunkist*.

¶ 35 In applying *Sunkist*, it is important to note that the key holding was that real estate and improvements could be assessed as separate units of property and not just as one complete unit. In *Sunkist*, there was *one* building on the property, and the tax assessment did not list the category of "Buildings," but only "Real Estate." Thus, because there was no separate assessment for "Buildings," this court held that someone with very general knowledge would know from the face of the notice that the improvement had not been assessed and had escaped assessment. *See Sunkist*, 789 P.2d at 292–93. That is not the case here.

¶ 36 *Sunkist* did not consider what should happen in the case of multiple improvements listed under the single category of "Buildings." Under the majority's holding, no property, whether land or improvement, could ever be escaped if the headings "Buildings" and "Real Estate" appeared on the assessment notice sent to the taxpayer. Taken to an unlikely but logical end, a property where only one building was assessed, yet ten buildings existed, would be considered undervalued—even where it could clearly be shown that nine of them had been omitted from the tax rolls when the assessment was made—so long as the assessment had a sum listed under the heading of "Buildings." Such a holding would be very poor

law and surely does not comport with the plain meaning of the statute.

¶ 37 Finally, the majority points out that "West Side relied on this assessment to be correct." I dissented in *Sunkist* on the same issue of finality and reliance. I thought that the taxpayer in *Sunkist*, a bona fide purchaser, should have the right to rely on the tax assessment. However, this issue was addressed in *Sunkist*, where this court reasoned:

> Sunkist also argues that because it relied on tax rolls which showed no delinquent taxes at the time Sunkist purchased the property, the County should be estopped from collecting the escaped taxes. But the question is not one of estoppel or perceived inequity; it is, rather, one of statutory construction.

*Sunkist*, 789 P.2d at 293–94. While I recognize the general rule that statutes imposing taxes and prescribing tax procedures should generally be construed favorably to the taxpayer, *see Nupetco*, 779 P.2d 1138 at 1139, such a preference should not come at the expense of the plain meaning of the statute. The statute could not be more clear. The legislature has said *any* improvement inadvertently omitted from the *tax rolls* is escaped property, and we should so hold. My concerns expressed in my dissent in *Sunkist* are no longer valid.

¶ 38 It is our task to interpret the law, not to change what the legislature intended. The determination of whether a property has escaped assessment must be based on whether the property has actually been omitted from the tax rolls. The mere fact that the heading "Buildings" appeared on the tax assessment notice with an amount listed under it does not eliminate the possibility of an improvement being omitted and escaping assessment. Any other holding would clearly violate and make inoperative the plain language of the current statute.

¶ 39 Justice WILKINS concurs in Chief Justice HOWE's dissenting opinion.