2000 UT App 319

**ALPINE SCHOOL DISTRICT BOARD OF EDUCATION, Petitioner,**

v.

**STATE TAX COMMISSION, PROPERTY TAX DIVISION, Respondent.**

No. 20000109–CA.

Court of Appeals of Utah.

Nov. 16, 2000.

Rehearing Denied Dec. 15, 2000.

---

7. If it were not consensual, the defendant would more appropriately be charged with rape under

Utah Code Ann. § 76–5–402 (1999).

Brinton R. Burbidge and Paul D. Van Komen, Burbidge Carnahan Ostler & White LLC, Salt Lake City, for Petitioner.

Jan Graham, Attorney General and Timothy A. Bodily, Assistant Attorney General, Salt Lake City, for Respondent.

Before Judges BENCH, BILLINGS, and DAVIS.

## OPINION

BENCH, Judge:

¶ 1 Petitioner Alpine School District (Alpine) appeals the decision of the Utah State Tax Commission (Commission), which upheld the lowering of Alpine's 1999 adopted tax rate by the Commission's Property Tax Division (Division). Alpine contends that the Division has no statutory authority to reduce Alpine's adopted tax rate. We reverse.

## BACKGROUND

¶ 2 Alpine formulated a budget for the 1999 tax year. After this budget was approved, the Division notified Alpine of its certified tax rate for ad valorem property tax. Within this certified tax rate was an adjustment for the change in the motor vehicle fee-in-lieu revenue, effective that year.[1] This adjustment was based on an estimate by the Division of what the motor vehicle fee-in-lieu revenue would be.

¶ 3 When Alpine received notification of its certified tax rate, it realized the rate would be inadequate to meet the needs of its budget. Therefore, Alpine proposed to the taxpayers an ad valorem tax rate higher than its certified tax rate. Alpine complied with the requirements commonly referred to as "truth in taxation" pursuant to Utah Code Ann. §§ 59–2–918 and 59–2–919 (1996 & Supp. 2000). The taxpayers approved Alpine's proposed tax rate and this rate was submitted to the Division.

¶ 4 In the meantime, the Commission discovered an error in the Division's calculation of the motor vehicle fee-in-lieu adjustment to the certified tax rate. When recalculated, the resulting certified tax rates were lower than those originally reported to the taxing entities. After Alpine submitted its adopted tax rate, which had been approved by the taxpayers, the Division lowered the rate by the same amount it had determined Alpine's certified tax rate should be lowered.

¶ 5 The Division claimed it had statutory authority to unilaterally lower Alpine's rate pursuant to Utah Code Ann. §§ 59–2–914 and 59–2–924 (1996 & Supp.2000). Alpine appealed to the Commission the Division's adjustment of its adopted rate. The Commission recognized that the Division could not lower Alpine's adopted rate under section 59–2–914 alone, since Alpine had complied with the truth in taxation requirements. The Commission nonetheless upheld the Division's action based on its reading of sections 59–2–914 and 59–2–924 together.

## ISSUE AND STANDARD OF REVIEW

¶ 6 The issue concerns whether the Division had authority under either section 59–2–914 or section 59–2–924 to lower Alpine's adopted tax rate. In reviewing the Commission's decision, we "grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court." Utah Code Ann. § 59–1–610(1)(b) (1996). The issue presented for our review is one of statutory interpretation, which is a question of law, and the Commission has been given no specific grant of discretion to interpret the statutes at issue. *See Airport Hilton Ventures v. Tax Comm'n*, 1999 UT 26, ¶ 7, 976 P.2d 1197. Therefore, we give no deference to the Commission's interpretation.

## ANALYSIS

¶ 7 Preliminarily, we discuss the Commission's belatedly filed Motion Regarding Suggestion of Mootness. The Commission contends that recent legislative changes requiring the Commission to make adjustments to certified tax rates to equalize any errors in the 1999 fee-in-lieu revenue estimates, as well as the fact that Alpine adopted a tax rate higher than the certified tax rate in 2000, render moot the Commission's decision on the 1999 tax rate. Thus, any harm Alpine may have experienced in subsequent years, based on the lowering of its 1999 tax rate, was abrogated by its adoption of a 2000 tax rate that was higher than its 1999 tax rate. The Commission concedes, however, that the broader issue of whether the Division has authority to alter a taxing entity's adopted rate may well arise in the future.

¶ 8 We have said that " '[a] case is deemed moot when the requested judicial

---

1. The certified tax rate is "a tax rate that will provide the same ad valorem property tax revenues for a taxing entity as were collected by that taxing entity for the prior year." Utah Code Ann. § 59–2–924(2)(a)(i) (Supp.2000). Prior to 1999, property taxes on certain tangible personal property, such as motor vehicles, were based on value. Utah Code Ann. § 59–2–405.1 (Supp. 2000), enacted in 1998, provides that starting in 1999, the taxes on tangible personal property include a uniform fee based on the age of the motor vehicle.

relief cannot affect the rights of the litigants.'" *49th St. Galleria v. Tax Comm'n,* 860 P.2d 996, 998 n. 4 (Utah Ct.App.1993) (quoting *Burkett v. Schwendiman,* 773 P.2d 42, 44 (Utah 1989)). The rights of a taxing entity such as Alpine to adopt a tax rate pursuant to statute without the Division unilaterally changing it are surely not negated by the fact that the taxing year in question has come and gone and subsequent measures were taken to correct the monetary difference. When a case "presents an issue that affects the public interest, is likely to recur, and because of the brief time that any one litigant is affected, is capable of evading review," we will address the merits of the case. *Burkett,* 773 P.2d at 44.

¶ 9 The Commission argues on appeal that section 59–2–914 gives the Division the authority to reduce Alpine's adopted tax rate. That section provides, in part: "[i]f the commission determines that a levy established for a taxing entity ... is in excess of the maximum levy permitted by law, the commission shall ... lower the levy so that it is set at the maximum level permitted by law." Utah Code Ann. § 59–2–914(1)(a) (1996). The Commission interprets this section to grant the Division broad discretion in determining whether a levy is in excess of the maximum, and then to reduce the levy to an appropriate level.

¶ 10 The Commission found that Alpine complied with the requirements of sections 59–2–918 and 59–2–919, which require a taxing entity to notify taxpayers of a proposed rate increase in excess of the certified rate, and to hold hearings regarding the increase. *See id.* §§ 59–2–918, –919 (1999). This finding notwithstanding, the Commission claims that because the erroneous information the Division had provided Alpine regarding the certified tax rate was then used in the notice to taxpayers during the truth in taxation process, the Division had authority to lower the adopted rate. This interpretation is not consistent with the plain language of the statute. The statute clearly states that the Division may only lower the tax rate if it exceeds the "maximum levy." *See id.* § 59–2–914(1)(a). The maximum levy is defined by statute as: ".0032 per dollar of taxable

value in all counties with a total taxable value of more than $100,000,000 . . . ." *Id.* § 59–2–908(1)(a) (1996). The Commission acknowledged during oral argument that Alpine's adopted tax rate does not exceed this figure.

¶ 11 The Commission also argues that section 59–2–924(2) gives the Division the authority to lower Alpine's adopted tax rate. That section reads:

> (f) For the calendar year beginning on January 1, 1999, and ending on December 31, 1999, a taxing entity's certified tax rate shall be adjusted by the amount necessary to offset the adjustment in revenues from uniform fees on tangible personal property under Section 59–2–405.1 as a result of the adjustment in uniform fees on tangible personal property under Section 59–2–405.1 enacted by the Legislature during the 1998 Annual General Session.

*Id.* § 59–2–924(2)(f) (Supp.2000). The Commission alleges that this section was added to avoid any possible shortfalls or windfalls to taxing entities as a result of the change in fee-in-lieu of ad valorem taxes charged on motor vehicles, which revenues are factored into an entity's certified tax rate. The Commission cites to statements made by legislators during Senate floor debates to derive the intent of the statute. In interpreting a statute, however, we are "guided by the principle that a statute is generally construed according to its plain language." *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995). Further, " '[w]hen language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction.'" *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick,* 890 P.2d 1017, 1020 (Utah 1995) (quoting *Hanchett v. Burbidge,* 59 Utah 127, 135, 202 P. 377, 380 (1921)). " 'Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations.'" *Nelson,* 905 P.2d at 875 (quoting *World Peace Movement v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994)).

¶ 12 We do not dispute that section 59–2–924(2)(f) gives the Division statutory authority to reduce a taxing entity's certified tax rate pursuant to fluctuations in fee-

in-lieu revenues. However, to also grant the Division authority to reduce a tax rate properly adopted under truth in taxation is to go well beyond the plain language of the statute. The legislature took great care in defining "certified tax rate" and providing the method for calculating the certified tax rate. *See* Utah Code Ann. § 59–2–924(2)(a)(i), (iii) (Supp.2000). The legislature also differentiated between a certified tax rate and one adopted by the taxing entity through the truth in taxation procedures outlined in sections 59–2–918 and 59–2–919. We "presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." *Nelson,* 905 P.2d at 875. We therefore conclude that section 59–2–924(2)(f) gives the Division the authority to adjust an entity's certified tax rate only.

¶ 13 Finally, at oral argument before this court, the Commission argued that it has a broad grant of constitutional authority to adjust tax rates pursuant to Article XIII, Section 11 of the Utah Constitution. Paragraph (3)(d) provides that the Commission "[u]nder such regulations in such cases and within such limitations as the Legislature may prescribe, . . . shall . . . revise the tax levies of local governmental units . . . ." Utah Const. art. XIII, § 11(3)(d). The Commission interprets this language as giving it unfettered authority to revise tax levies, except for specific statutory limitations. We disagree. We cannot conclude that this constitutional provision is self-executing. A self-executing provision is one that "can be judicially enforced without implementing legislation." *Spackman v. Board of Educ. of Box Elder County,* 2000 UT 87, ¶ 7. As stated by the Utah Supreme Court, "[t]he tax commission is created by statute and has only such powers as the statute confers upon it." *E.C. Olsen Co. v. State Tax Comm'n,* 109 Utah 563, 168 P.2d 324, 328 (1946). The language in section 59–2–914 (giving the Division the authority to lower tax rates that exceed the maximum levy) and in section 59–2–924(2)(f) (giving the Division authority to reduce the certified tax rate) are legislative grants of specific authority. In granting such specific authority, the legislature necessarily limited the circumstances in which the

Division is authorized to adjust tax rates. The general language in the constitution regarding the Commission's duties, therefore, does not broaden the statutory mandate. Where the legislature enacts regulations governing when tax rates can be adjusted, as it did in sections 59–2–914 and 59–2–924, the constitution simply directs that the Commission is the state agency authorized to carry out those duties.

### CONCLUSION

¶ 14 The Division had no authority under sections 59–2–914 and 59–2–924(2)(f) to reduce the adopted tax rate of Alpine. Therefore, we reverse the decision of the Commission.

¶ 15 We concur: BILLINGS and DAVIS, JJ.